

1   Benjamin K. Riley, State Bar No. 112007
        *briley@bztm.com*
2   C. Griffith Towle, State Bar No. 146401
        *gtowle@bztm.com*
3   Brian Villarreal, State Bar No. 234690
        *bvillarreal@bztm.com*
4   Simon R. Goodfellow, State Bar No. 246085
        *sgoodfellow@bztm.com*
5   BARTKO, ZANKEL, TARRANT & MILLER
    A Professional Corporation
6   900 Front Street, Suite 300
    San Francisco, California  94111
7   Telephone:    (415) 956-1900
    Facsimile:     (415) 956-1152
8
    Attorneys for Defendants
9   MONEY MART EXPRESS, INC., and
    DOLLAR FINANCIAL GROUP, INC.
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15   JANELLE JASSO, individually, and on behalf   )   Case No.   **5500**
     of other members of the general public similarly )
16   situated,                                    )
                                                  )   **DEFENDANTS MONEY MART**
17              Plaintiff,                         )   **EXPRESS, INC.'S AND DOLLAR**
                                                  )   **FINANCIAL GROUP, INC.'S**
18        v.                                       )   **NOTICE OF REMOVAL**
                                                  )
19   MONEY MART EXPRESS, INC., a Utah             )
     corporation; DOLLAR FINANCIAL GROUP,         )
20   INC., a New York corporation; and DOES 1     )
     through 100, inclusive,                       )
21                                                )
                                                  )
22              Defendants.                        )
     _____)

23

24

25

26

27

28

-1-

2186.003/543564.1                          DEFENDANTS' NOTICE OF REMOVAL
                                                              Case No.:

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that defendants MONEY MART EXPRESS, INC. ("Money Mart") and DOLLAR FINANCIAL GROUP, INC. ("Dollar") (collectively "defendants") hereby remove this case from the Superior Court of the State of California for the County of San Francisco, to the United States District Court, Northern District of California, San Francisco Division. Defendants remove this matter pursuant to 28 U.S.C. sections 1441, 1446 and 1453, asserting original federal jurisdiction under 28 U.S.C. sections 1332(d), and state that this Court has jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

### BACKGROUND

1.    On October 12, 2011, plaintiff Janelle Jasso ("plaintiff") filed a complaint against defendants in the Superior Court of the State of California for the County of San Francisco, captioned *Janelle Jasso, individually, and on behalf of other members of the general public similarly situated v. Money Mart Express, Inc., et al.*, Case No. CGC-11-515048 (the "Complaint"). A true and correct copy of the Summons, Complaint, Civil Cover Sheet, and Notice to Plaintiff, served on Money Mart and Dollar are attached as Exhibits A & B to the Declaration of Melissa H. Soper in Support of Notice of Removal ("Soper Decl."), served and filed herewith. (Soper Decl., ¶¶3 & 8, Exh. A & B).

2.    The Complaint purports to assert two claims for relief stemming from plaintiff's (and a purported class of similarly situated individuals') employment with defendants, based upon defendants' alleged failure to comply with the requirements set forth in California Labor Code sections 226.7 and 512 (failure to provide meal and rest breaks), sections 1194, 1198 and 510 (failure to pay overtime compensation),  sections 226 and 1174 (failure to provide accurate wage statements and maintain required records), section 1197 (failure to pay minimum wage), sections 201-203 (failure to pay wages upon termination), section 204 (failure to pay bi-weekly wages), section 2802 (failure to indemnify for expenditures), section 2800 (failure to

-2-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lord · Anderson, Inc. · of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

DEFENDANTS' NOTICE OF REMOVAL
Case No.:

1  indemnify for losses caused by negligence), and California Business & Professions Code section

2  17200, *et seq.* (unfair competition).

3      3.  Plaintiff has filed this action as a putative class action.  Plaintiff seeks to

4  represent: "All current and former hourly paid or non-exempt California based (i.e., currently

5  'residing' in California) employees who worked for Defendants within the State of California at

6  any time during the period from four years preceding the filing of this Complaint to final

7  judgment." (Complaint, ¶14).

8                    **TIMELINESS OF REMOVAL**

9      4.  Defendants were served with the Summons, Complaint, Civil Case Cover

10  Sheet and Notice to Plaintiff on October 14, 2011.  (Soper Decl., ¶¶3 & 8, Exhs. A & B).  Thus,

11  this Notice of Removal is timely as it is filed within thirty (30) days of service of the Summons

12  and Complaint on defendants, which revealed that this case was properly removable.  28 U.S.C.

13  section 1446(b).[1]

14              **ORIGINAL JURISDICTION – CLASS ACTION FAIRNESS ACT**

15      5.  The Court has original jurisdiction of this action under the CAFA, codified

16  in relevant part in 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly

17  removable, pursuant to the provisions of 28 U.S.C. section 1441(a), as the action: (i) involves 100

18  or more putative class members; (ii) the amount in controversy exceeds $5,000,000, exclusive of

19  interest and costs; and (iii) at least one member of the putative class is a citizen of a state different

20  from that of at least one defendant.

21                  **MORE THAN 100 PUTATIVE CLASS MEMBERS**

22      6.  Plaintiff seeks to represent: "All current and former hourly paid or non-

23  exempt California based (i.e., currently 'residing' in California) employees who worked for

24  Defendants within the State of California at any time during the period from four years preceding

25  the filing of this Complaint to final judgment." (Complaint, ¶14).  During the period from four

26

[1]  *See Despres v. Ampco-Pittsburgh Corp.*, 577 F.Supp.2d 604 (D. Conn. 2008) (removal
27  timely within 30-day period, under federal rule of civil procedure that extended removal period
until next regular weekday, where statutory filing deadline fell on weekend).
28

1    years preceding the filing of the Complaint through the present, defendants have employed 990

2    hourly-paid, non-exempt employees in California. (Declaration of Jason Fisher in Support of

3    Notice of Removal ["Fisher Decl."], ¶11).

4                    **THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

5            7.     The Complaint seeks to recover for the alleged failure to comply with the

6    requirements set forth in the California Labor Code, including failure to pay minimum wage,

7    failure to pay overtime compensation, failure to provide meal periods, failure to provide rest

8    breaks, failure to pay wages upon termination, failure to pay bi-weekly wages, failure to provide

9    accurate wage statements and maintain required records, failure to indemnify for expenditures,

10   failure to indemnify for losses caused by negligence, and California Business & Professions Code

11   section 17200, *et seq.* (unfair competition), and seeks penalties, restitution and disgorgement of all

12   sums obtained through alleged unfair competition, and attorneys' fees and costs. (Complaint,

13   Prayer for Relief, pp. 16:14-18:16). As outlined below, defendants have easily established, by a

14   preponderance of the evidence, that the damages sought by plaintiff exceed $5 million, thus

15   satisfying the CAFA amount-in-controversy requirement.

16           8.     The claims of the individual members in a class action are aggregated to

17   determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C.

18   § 1332(d)(6). Congress intended for federal jurisdiction to be appropriate under CAFA "if the

19   value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the

20   viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive

21   relief, or declaratory relief)." *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal.

22   2005), citing Senate Committee on the Judiciary Report, S. REP. 109-14, at 42 (Feb. 28, 2005).

23   Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that

24   any doubts regarding the maintenance of interstate class actions in state or federal court should be

25   resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is

26   uncertain about whether 'all matters in controversy' in a purported class action 'do not in the

27   aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising

28

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-4-

1  jurisdiction over the case. . . .  Overall, new section 1332(d) is intended to expand substantially

2  federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong

3  preference that interstate class actions should be heard in a federal court if properly removed by

4  any defendant.").

5           9.     In her Complaint, plaintiff prays for "damages, restitution and penalties"

6  exceeding $25,000, "but not to exceed five million dollars ($5,000,000)."  (Complaint, Prayer for

7  Relief p. 16:14-19).  Despite this purported $5,000,000 limitation, plaintiff's Complaint seeks far-

8  ranging relief on a class-wide basis including: minimum wage penalties, overtime compensation,

9  missed meal period compensation, missed rest break compensation, and *attorneys' fees*.  Since

10 attorney's fees are to be included in the 28 U.S.C. section 1332(d)(6) amount-in-controversy

11 calculation, and since plaintiff fails to include them in her calculation of the "damages, restitution

12 and penalties," plaintiff's Complaint is rendered ambiguous as to the amount-in-controversy

13 alleged.  *See Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 700 (9th Cir. 2007).  Indeed,

14 plaintiff's Complaint seeks attorneys' fees purportedly authorized pursuant to California Code of

15 Civil Procedure section 1021.5, and relevant sections of the Labor Code.  *Lowdermilk v. U.S. Bank*

16 *National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) ("[W]here an underlying statute authorizes an

17 award of attorneys' fees, either with mandatory or discretionary language, such fees may be

18 included in the amount in controversy.")  Where, as here, plaintiff's "damages, restitution and

19 penalties" limitation does not take account of the attorneys' fees sought, "the complaint fails to

20 allege a sufficiently specific total amount in controversy."  *Guglielmino,* 506 F.3d at 701.

21          10.    Where it is unclear or ambiguous from the face of a state court complaint

22 whether the requisite amount in controversy is pled, "the removing defendant bears the burden of

23 establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the

24 jurisdictional amount]."  *Id.* at 699, *citing Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404

25 (9th Cir. 1996).[2]  Under the preponderance of the evidence standard, the Court must determine

26

27 _____

   [2]     If plaintiff had affirmatively alleged in its Complaint that the amount in controversy
28 *including the attorneys' fees sought* is less than the $5,000,000 jurisdictional threshold, defendants
   would have a burden of establishing that the amount in controversy exceeds $5,000,000 "with

-5-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    whether it is "more likely than not" that the amount in controversy exceeds $5,000,000.  *Id.*  In

2    making this determination, "the court should consider, in addition to the complaint itself, 'facts in

3    the removal petition and . . . summary judgment-type evidence relevant to the amount in

4    controversy at the time of removal.'"  *Lowdermilk,* 479 F.3d at 1004.  Under this approach, the

5    alleged amount in controversy in this purported class action more likely than not exceeds, in the

6    aggregate, $5,000,000.

7            11.    Defendants' calculations, set forth below, establish by a preponderance of

8    the evidence that the minimum wage penalties, overtime compensation, unpaid meal

9    compensation, and rest break compensation alone, using conservative estimates, exceed the

10   $5,000,000 jurisdictional minimum.

11           12.    For purposes of establishing the amount-in-controversy, defendants use a

12   four year statute of limitations for overtime compensation, as it is alleged under Business &

13   Professions Code section 17200 (*see Cortez v. Purolator Air Filtration Products Co.*, 24 Cal.4th

14   163, 178-179 (2000)); a three year statute of limitations for missed meal compensation and missed

15   rest break compensation (*see Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1114

16   (2007));[3] and a one year statute of limitations for the minimum wage penalties (*see* Cal. Code Civ.

17   Proc. § 340(a)).

18           All calculations supporting the amount in controversy are based on the Complaint's

19   allegations and the facts set forth in the declarations submitted herewith, assuming, without any

20   admission, the truth of the facts alleged by plaintiff.

21

22

23   legal certainty."  *Guglielmino,* 506 F.3d at 699.  However, because plaintiff's Complaint is
     ambiguous due to her failure to include attorneys' fees in the purported $5 million limitation,
24   defendants' burden is the "preponderance of the evidence standard."  *Id.* at 699-701.

25   [3]     Although defendants' contest the application of California Business & Professions Code
     section 17200's four year statute of limitations to the missed meal compensation and missed rest
26   break compensation claims, and have not found a case extending that statute of limitations to such
     claims, to the extent that plaintiff will argue that a four year statute of limitations applies under the
27   reasoning of *Cortez,* 23 Cal.4th at 178, defendants' calculations of the amount-at-issue would
     increase by $472,814.72 to: $6,289,556.76.
28

-6-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Defendants' calculations of certain applicable penalties are outlined in the following table, and explained in detail below:

| Penalty | Calculation | Potential Exposure |
|---|---|---|
| Minimum Wage Penalties (Cal. Labor Code §1197.1) | (451 employees x $100 for initial violation) + ((11,348 bi-weekly pay-period checks at issue – 451 "initial violation" bi-weekly pay-period checks) x $250 for each "subsequent violation") | $2,769,350.00 |
| Overtime Compensation | (45,634 bi-weekly employee pay-period checks) x (2 overtime hours per bi-weekly pay period) x ($11.02 lowest average hourly wage during 4-year period) x (1.5 overtime premium multiplier) | $1,508,660.04 |
| Unpaid Meal Compensation (Labor Code §226.7) | (33,020 bi-weekly employee pay-period checks) x (2 violations per bi-weekly pay-period) x ($11.65 lowest average hourly wage during 3-year period) | $769,366.00 |
| Unpaid Rest Break Compensation (Labor Code §226.7) | (33,020 bi-weekly employee pay-period checks) x (2 violations per bi-weekly pay-period) x ($11.65 lowest average hourly wage during 3-year period) | $769,366.00 |
| | **Total:** | **$5,816,742.04** |

## MINIMUM WAGE PENALTIES

13. Plaintiff seeks recovery on behalf of herself and the putative class members for an alleged "uniform policy and systematic scheme" of "failing to pay them for all hours worked." (Complaint, ¶28; *see also* ¶¶20, 33, 35, 56, 58, 60, 72). Plaintiff specifically alleges that "[a]t all material times set forth herein, Defendants failed to pay Plaintiff and the other class members at least minimum wages for all hours worked." (*Id.* ¶42). Pursuant to California Labor Code section 1197.1, the penalty for failing to timely pay an employee minimum wages is $100 for the initial failure, and $250 for each subsequent failure.[4]

14. In the one year preceding the filing of the Complaint through the present — from October 12, 2010 to November 7, 2011 — defendants employed 451 hourly-paid, non-exempt employees in California, and defendants issued 11,348 bi-weekly pay-period checks to those employees. (Fisher Decl., ¶9). Thus, assuming that defendants failed to pay each of the 451 employees their minimum wages for all hours worked at each bi-weekly pay-period during the

---

[4] It should be noted that plaintiff also seeks interest on unlawfully unpaid wages, pursuant to California Labor Code section 1194.2.

-7-

DEFENDANTS' NOTICE OF REMOVAL
Case No.:

relevant one-year period, the amount at issue on minimum wage penalties would be: **$2,769,350.00** (451 employees x $100 for initial violation) + ((11,348 bi-weekly pay-period checks at issue – 451 "initial violation" bi-weekly pay-period checks) x $250 for each "subsequent violation").

## OVERTIME COMPENSATION

15.     Plaintiff also alleges that as part of defendants' "uniform policy and systematic scheme of wage abuse," she and the putative class members did not receive wages for overtime compensation. (Complaint, ¶¶28, 29, 35, 57, 59, 61, 69). Plaintiff specifically alleges that "[a]t all material times set forth herein . . . [p]laintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime." (*Id.* ¶40).

16.     In the four years preceding the filing of the Complaint through the present — from October 12, 2007 to November 7, 2011 — defendants employed 990 hourly-paid, non-exempt employees in California, and defendants issued 45,634 bi-weekly pay-period checks. (Fisher Decl., ¶11). During this period, the lowest average hourly wage paid to these employees for any pay-period was $11.02, and the highest average hourly wage was $12.67. (*Id.*).[5] For purposes of calculation, defendants are using the *lowest* average hourly wage paid to non-exempt employees during the entire four-year period: *i.e.*, $11.02. Defendants assume that each class member missed one-hour of overtime pay each week (two per bi-weekly pay-period).

17.     Based on the allegations that plaintiff and members of the putative class were "systematically" and by "uniform policy" deprived of overtime wages "at all material times" during the class period, and then assuming that each class member missed one-hour of overtime pay each week (two per bi-weekly pay-period) during the three-year period, the amount in controversy on this claim would be: **$1,508,660.04** (45,634 bi-weekly employee pay-period

---

[5]     The "average hourly wage" for the particular periods listed below is calculated by taking the sum of base pay earnings paid to all non-exempt employees during a bi-weekly pay-period, and dividing the resulting sum by the total number of base pay hours worked by non-exempt employees during that same bi-weekly pay-period. (Fisher Decl., ¶8).

-8-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

DEFENDANTS' NOTICE OF REMOVAL
Case No.:

1  checks) x (2 overtime hours per bi-weekly pay period) x ($11.02 lowest average hourly wage
2  during 4-year period) x (1.5 overtime premium multiplier).

**UNPAID MEAL COMPENSATION**

4        18.     Plaintiff also seeks recovery on behalf of herself and the putative class
5  members for an alleged "uniform policy and systematic scheme" of "failing to pay them for all
6  hours worked [including] missed meal periods. . . ."   (Complaint, ¶¶28, 33, 35, 56, 58, 60).
7  Plaintiff specifically alleges that "[a]t all material times set forth herein, Defendants failed to
8  provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members."
9  (*Id.* ¶42). Pursuant to California Labor Code section 226.7, the money owed for a meal period that
10 is not provided as required by the applicable California Wage Order is one hour of an aggrieved
11 employee's pay for each day that a meal period is not provided.

12       19.     In the three years preceding the filing of the Complaint through the present
13 — from October 12, 2008 to November 7, 2011 — defendants employed 734 hourly-paid,
14 non-exempt employees in California, and defendants issued 33,020 bi-weekly pay-period checks
15 to those employees. (Fisher Decl., ¶10). During this period, the lowest average hourly wage paid
16 to these employees for any pay-period was $11.65, and the highest average hourly wage was
17 $12.67. (*Id.*). For purposes of calculation, defendants are using the *lowest* average hourly wage
18 paid to non-exempt employees during the three-year period: *i.e.,* $11.65. Defendants assume that
19 each class member missed one meal period each week (two per bi-weekly pay-period).

20       20.     Based on the allegations that plaintiff and members of the putative class
21 were "systematically" deprived of state-mandated meals and then assuming only one missed meal
22 period per employee per week (two meals per bi-weekly pay-period) during the three-year period,
23 the total amount in controversy based on these claims would be: **$769,366.00** (33,020 bi-weekly
24 employee pay-period checks) x (2 violations per bi-weekly pay-period) x ($11.65 lowest average
25 hourly wage during 3-year period).

-9-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1

## UNPAID REST BREAK COMPENSATION

2    21.    Plaintiff also seeks recovery on behalf of herself and the putative class

3    members for an alleged "uniform policy and systematic scheme" of "failing to pay them for all

4    hours worked [including] missed . . . rest breaks." (Complaint, ¶28, 33, 35, 56, 58, 60).  Plaintiff

5    specifically alleges that "[a]t all material times set forth herein, Defendants failed to provide the

6    requisite uninterrupted meal and rest periods to Plaintiff and the other class members."  (*Id.* ¶42).

7    Pursuant to California Labor Code section 226.7, the money owed for a rest break that is not

8    provided as required by the applicable California Wage Order is one hour of pay per day for each

9    day that a rest break is not provided.

10    22.    In the three years preceding the filing of the Complaint through the present

11    — from October 12, 2008 to November 7, 2011 — defendants employed 734 hourly-paid,

12    non-exempt employees in California, and defendants issued 33,020 bi-weekly pay-period checks

13    to those employees. (Fisher Decl., ¶10). During this period, the lowest average hourly wage paid

14    to these employees for any pay-period was $11.65, and the highest average hourly wage was

15    $12.67.  (*Id.*). For purposes of calculation, defendants are using the *lowest* average hourly wage

16    paid to non-exempt employees during the three-year period: *i.e.,* $11.65.  Defendants assume that

17    each class member missed one rest break each week (two per bi-weekly pay-period).

18    23.    Based on the allegations that plaintiff and members of the putative class

19    were "systematically" deprived of state-mandated rest breaks and then assuming only one missed

20    rest break per employee per week (two rest breaks per bi-weekly pay-period) during the three-year

21    period, the total amount in controversy based on these claims would be: **$769,366.00** (33,020 bi-

22    weekly employee pay-period checks) x (2 violations per bi-weekly pay-period) x ($11.65 lowest

23    average hourly wage during 3-year period).

24    24.    Thus, excluding attorneys' fees, the total amount in controversy based on

25    the allegations concerning minimum wage penalties, unpaid overtime wages, and unpaid meal

26    periods, and unpaid rest breaks, using the calculations set forth above, is by a preponderance of the

27    evidence *at least* **$5,816,742.04**, well exceeding the jurisdictional threshold of $5,000,000.

28

-10-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

**ATTORNEYS' FEES**

25.     The Complaint also alleges that putative class members are entitled to recover attorneys' fees. Requests for attorneys' fees must be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in the amount in controversy, regardless of whether award is discretionary or mandatory). Given the allegations contained on the face of plaintiff's Complaint, attorneys' fees substantially increase the amount-at-issue — which already more likely than not exceeds $5,000,000 — perhaps by as much as $1.4 million.[6]

26.     Thus, although defendants deny plaintiff's allegations or that plaintiff, or the putative class she purports to represent, is entitled to the relief for which she has prayed, based on plaintiff's allegations and prayer for relief, it is more likely than not that the amount in controversy exceeds $5,816,742.04, plus a substantial sum of attorneys' fees. This amount clearly exceeds the $5,000,000 threshold set forth under 28 U.S.C. section 1332(d)(2).

**DIVERSE CITIZENSHIP OF THE PARTIES**

27.     **Plaintiff's Citizenship.** Plaintiff was at the time this action commenced and, based on information and belief, still is, a resident of the State of California. (Complaint, ¶5). To establish citizenship for diversity purposes a natural person must be (1) a citizen of the United States, and (2) domiciled in the state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

---

[6]     Attorneys' fees may be awarded based on the lodestar method (calculated by applying counsel's hourly rates to the time spent and a risk multiplier where appropriate). *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003). Alternatively, the court may simply award counsel a percentage of the fund recovered. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The Ninth Circuit has established a benchmark of 25% of the recovery, which may be adjusted or replaced by a lodestar calculation "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Given the allegations contained on the face of plaintiff's Complaint, an award of attorneys' fees equal to 25% of the alleged damages outlined above would equal: $1,454,185.51 ((.25) x ($5,816,742.04)).

-11-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    28.   **Defendant Money Mart's Citizenship.**   Pursuant to 28 U.S.C. section

2    1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been

3    incorporated and of the State where it has its principal place of business."   Money Mart is

4    currently, and since this action commenced has been, incorporated under the laws of the State of

5    Utah, with its principal place of business in Berwyn, Pennsylvania.   (Soper Decl., ¶4).   The

6    appropriate test to determine a corporation's principal place of business is the "nerve center" test.

7    *Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181, 1192 (2010).   Under the "nerve center" test, the

8    principal place of business is the state where the "corporation's officers, direct, control, and

9    coordinate the corporation's activities" and where the corporation maintains its headquarters.   *Id.*

10    29.   Money Mart's corporate headquarters are located in Berwyn, Pennsylvania,

11    and it maintains its administrative offices, corporate records and files in Berwyn, Pennsylvania.

12    (Soper Decl. ¶5).   Money Mart's officers direct, control and coordinate the corporation's activities

13    in and from Berwyn, Pennsylvania.   Specifically, the Chief Executive Officer, Vice Presidents,

14    Secretary, and all other officers and directors of Money Mart operate and direct business out of its

15    headquarters in Berwyn Pennsylvania.   (Soper Decl., ¶6).   Money Mart does not have a single

16    corporate department or corporate officer within the State of California.   (Soper Decl., ¶7).

17    Accordingly, Money Mart is, and has been at all times since this action commenced, a citizen of

18    Utah and Pennsylvania.

19    30.   **Defendant Dollar's Citizenship.**   Dollar is currently, and since this action

20    commenced has been, incorporated under the laws of the State of New York, with its principal

21    place of business in Berwyn, Pennsylvania.   (Soper Decl., ¶9).   Dollar's corporate headquarters are

22    located in Berwyn, Pennsylvania, and it maintains its administrative offices, corporate records and

23    files in Berwyn, Pennsylvania.   (Soper Decl. ¶10).   Dollar's officers direct, control and coordinate

24    the corporation's activities in and from Berwyn, Pennsylvania.   Specifically, the Chief Executive

25    Officer, its Vice Presidents, Secretary, Treasurer, and all other officers and directors of Dollar

26    operate and direct business out of its headquarters in Berwyn Pennsylvania.   (Soper Decl., ¶11).

27    Dollar does not have a single corporate department or corporate officer within the State of

28

-12-

BARTKOZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  California. (Soper Decl., ¶12). Accordingly, Dollar is, and has been at all times since this action

2  commenced, a citizen of New York and Pennsylvania. *See Hertz Corp.*, 130 S.Ct. at 1192.[7]

3      31.    Defendants Money Mart and Dollar are citizens of different states than

4  plaintiff, thus satisfying the CAFA diversity requirement.

5      32.    Because this action involves more than 100 putative class members, because

6  defendants have established by a preponderance of the evidence that the amount in controversy

7  exceeds $5,000,000, and because diversity of citizenship exists, this Court has original jurisdiction

8  of the action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for

9  removal to this Court.

**VENUE**

      33.    Venue lies in this Court pursuant to 28 U.S.C. section 1391. This action

was originally brought in the Superior Court of the State of California for the County of San

Francisco, and plaintiff resided in the County of San Francisco at the time the Complaint was filed.

      34.    **Intradistrict Assignment.** Intradistrict assignment to the San Francisco

Division of the United States District Court, Northern District of California is proper. Pursuant to

Civil Local Rule 3-2(c), a civil action shall be assigned by the Clerk to a courthouse servicing the

county in which the action arises, *i.e.*, "the county in which a substantial part of the events or

18  omissions which give rise to the claim occurred." This action was originally brought by plaintiff

19  in the Superior Court of the State of California for the County of San Francisco, alleging claims

20  against defendants relating to plaintiff's employment as an hourly-paid, non-exempt employee in

21  the County of San Francisco. (Complaint ¶¶5, 19). Thus, a substantial part of the events which

22  give rise to plaintiff's employment claims occurred in San Francisco.

---

[7]    Pursuant to 28 U.S.C. section 1441(a), the residence of defendants sued under fictitious
names shall be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C.
section 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1219 (9th Cir. 1980) ("unknown
defendants sued as 'Does' need not be joined in a removal petition"). Thus, the existence of Doe
defendants one through one hundred, inclusive, does not deprive this Court of jurisdiction.

-13-

DEFENDANTS' NOTICE OF REMOVAL
                                                    Case No.:

1

## NOTICE OF REMOVAL

2      35.   A true and correct copy of this Notice of Removal will be promptly served

3 on plaintiff and filed with the Clerk of the Superior Court of the State of California for the County

4 of San Francisco, as required under 28 U.S.C. section 1446(d). In compliance with 28 U.S.C.

5 section 1446(a), defendants have attached herein a copy of the state-court papers served on

6 defendants: the summons, complaint, civil cover sheet, and notice to plaintiff. (Soper Decl., ¶¶3 &

7 8, Exhs. A & B.)

8      **WHEREFORE**, defendants pray that the above action pending before the Superior

9 Court of the State of California for the County of San Francisco be removed to the United States

10 District Court for the Northern District of California, San Francisco Division.

11 DATED: November 14, 2011

12                        BARTKO, ZANKEL, TARRANT & MILLER

                          A Professional Corporation

13

14

15 By _____

                       Brian P. Villarreal

16                Attorneys for Defendants

               MONEY MART EXPRESS, INC., and

17                DOLLAR FINANCIAL GROUP, INC.

18 ... 28

-14-