R. Rex Parris, Esq. (SBN 96567)
rrparris@rrexparris.com
Alexander R. Wheeler, Esq. (SBN 239541)
awheeler@rrexparris.com
Douglas Han, Esq. (SBN 232858)
dhan@rrexparris.com
**R. REX PARRIS LAW FIRM**
42220 10th Street West, Suite 109
Lancaster, California 93534
Telephone:  (661) 949-2595
Facsimile:  (661) 949-7524


Edwin Aiwazian, Esq. (SBN 232943)
edwin@aiwazian.com
Arby Aiwazian, Esq. (SBN 269827)
arby@aiwazian.com
Jill J. Parker, Esq. (SBN 274230)
jill@aiwazian.com
Maria F. Nickerson, Esq. (SBN 274225)
maria@aiwazian.com
**LAWYERS for JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone:  (818) 265-1020
Facsimile:  (818) 265-1021

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE JASSO; individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONEY MART EXPRESS, INC., a Utah corporation; DOLLAR FINANCIAL GROUP, INC., a New York corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: CV-11-05500<br><br>CLASS ACTION<br><br>**PLAINTIFF JANELLE JASSO'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CIVIL PROCEEDINGS**<br><br>Date:        January 13, 2012<br>Time:        9:00 a.m.<br>Courtroom: 10 |

1

**TABLE OF CONTENTS**

2

PAGES

3

ISSUES PRESENTED .................................................................................................1

4

SUMMARY OF OPPOSITION .....................................................................................1

5

FACTS SUPPORTING UNCONSCIONBILITY ..............................................................2

6

LEGAL STANDARD ..................................................................................................3

7

ARGUMENT ............................................................................................................4

8

1.  DEFENDANTS' ARBITRATION FORM IS UNCONSCIONABLE AND THEREFORE

9

UNENFORCEABLE. .................................................................................................4

10

A.  Unconscionable Arbitration Agreements Are Not Enforced in California............4

11

B.  California's Unconscionability Doctrine is Not Preempted by the FAA. ..............5

12

C.  Defendants' Arbitration Form is Procedurally Unconscionable............................6

13

D.  Defendants' Arbitration Form is Substantively Unconscionable. .........................8

14

E.  Defendants' Arbitration Form Should Not Be Enforced Because it is Permeated

15

by Unconscionability. ..............................................................................................9

16

2.  DEFENDANTS' CLASS ARBITRATION WAIVER VIOLATES ESTABLISHED PRINCIPLES OF

17

CALIFORNIA PUBLIC POLICY AND IS THEREFORE UNENFORCEABLE. ...............................10

18

A.  Class Arbitration Waivers in Wage-and-Hour Cases Waive Unwaivable Statutory

19

Rights. ....................................................................................................................10

20

B.  Gentry's Public Policy Rule is Not Preempted by the FAA. ...............................12

21

C.  Defendants' Class Arbitration Waiver is Unenforceable Under the Four Gentry

22

Factors.....................................................................................................................14

23

1.  Modest Potential Individual Recovery .................................................................14

24

2.  Fear of Potential Employer Retaliation ................................................................15

25

3.  Knowledge of Rights............................................................................................16

26

4.  The Class Arbitration Waiver is Unenforceable ..................................................16

27

3.  THE BROUGHTON-CRUZ RULE PROHIBITS PLAINTIFF'S REQUEST FOR INJUNCTIVE

28

RELIEF FROM BEING COMPELLED TO ARBITRATION.......................................................17

i

1

A.    The *Broughton-Cruz* Rule is Not Preempted by the FAA. ................................... 18

B.    The *Broughton-Cruz* Rule Encompasses Plaintiff's Request for Injunctive Relief.
     18

CONCLUSION ....................................................................................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**PAGES**</u>

3

**Cases**

4
*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).................4, 6, 7, 8

5
*Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 836 (2010)........................13

6
*Armendariz v. Found. Heal Psyhcare Servs.*, 24 Cal. 4th 83, 114 (2000) ............4, 6, 8, 10

7
*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) .....................5, 12, 13, 14, 18

8
*Auto Equity Sales v. Superior Court*, 57 Cal. 2d 450, 455 (1962) ...................................13

9
*Barretine v. Arkansas—Best Freight Sys*, 450 U.S. 728, 739 (1981)...............................19

10
*Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715, 745 ...........................15, 19

11
*Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1082–83 (1999).........17

12
*Brown v. Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 497–98 (2011) ...............12, 13, 14

13
*Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315–16 (2003) ............................17

14
*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) .........................................4

15
*Early v. Superior Court*, 79 Cal. App. 4th 1420, 1430) .................................................19

16
*Ferguson v. Corinthian Colleges*, Nos. SACV 11–0127 DOC (AJWx), SACV 11–0259

17
DOC (AJWx), 2011 WL 4852339, *9–10 (C.D. Cal. Oct 6, 2011)...............................18

18
*First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995).............................................3

19
*Gentry v. Superior Court*, 42 Cal. 4th 443, 451–66 (2007)......................................passim

20
*Grabowski v. Robinson*, __ F. Supp. 2d __, 2011 WL 4353998, *19 (S.D. Cal. Sept. 19,

21
2011)........................................................................................................................13

22
*Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77 (2003) ..............................................7

23
*In re Checking Account Overdraft Litig.*, No. 09–MD–02036–JLK, 2011 WL 4454913,

24
*4 (S.D. Fla. Sept. 1, 2011) .........................................................................................5

25
*In re DirectV Early Cancellation Fee Mktg. & Sales Practices Litig.*, ML 09–2093 AG

26
(ANx), 2011 WL 4090774, *9–10 (C.D. Cal. Sept. 6, 2011) ........................................18

27
*Kanbar v. O'Melveny & Myers*, No. C–11–0892 EMC, 2011 WL 2940690, *6 (N.D. Cal.

28
July 21, 2011) ...........................................................................................................5

*Lewis v. UBS Financial Services Inc.*, __ F. Supp. 2d __, 2011 WL 4727795, at *5 (N.D. Cal. Sept 30, 2011) ................................................................. 13

*Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 853 (2010) ................... 10

*Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1077 (2003) ................................................ 12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 & n. 9 (1995) .......... 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635–36 (1985) ............................................................................................................................... 17

*Morse v. ServiceMaster Global Holdings Inc.*, No. C 10–00628 SI, 2011 WL 3203919, *3, n. 1 (N.D. Cal. July 27, 2011) ............................................................................. 14

*Mullins v. Rockwell Int'l Corp.* 15 Cal.4th 731, 741 (1997) ............................................. 16

*Murphy v. DirecTV, Inc.*, No. 2:07–cv–06465–JHN–VBKx, 2011 WL 3319574, *4 ...... 13

*Plows v. Rockwell Collins, Inc.*, No. SACV 10–01936 DOC (MANx), 2011 WL 3501872, *4 (N.D. Cal. Aug. 18, 2011) ................................................................. 12, 14

*Quevedo v. Macy's, Inc.*, __ F. Supp. 2d __, 2011 WL 3135052, at *16–17 (C.D. Cal. June 16, 2011) ......................................................................................................... 14

*Ramirez v. Yosemite Water Co.* 20 Cal.4th 785, 796–98 (1999) ........................................ 16

*Richards v. CH2M Hill, Inc.* 26 Cal. 4th 798, 821 (2001) ................................................. 15

*Sanchez v. Valencia Holding Co.*, LLC, No. B228027, 2011 WL 5865694, *8 (Cal. Ct. App. Nov 23, 2011) ............................................................................................. 5, 8, 13

*Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997) .......................................... 4

*Valle v. Lowe's HIW, Inc.*, 2011 WL 36674441, at *6 (N.D. Cal. Aug. 22, 2011) ........... 13

*Volt Info. Sci., Inc. v. Bd. Of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ......................................................................................................................... 3

*Zullo v. Superior Court*, 197 Cal. App. 4th 477, 465–66 (2011) ................................... 6, 9

**Statutes**

9 U.S.C. § 2 (2010) ............................................................................................................... 3

Cal. Civ. Code § 1670.5(a) .................................................................................................. 4

Cal. Lab. Code § 1194 (West 2011) .................................................................................. 11

**Other Authorities**

Asian Pacific American Legal Center et al., *Reinforcing the Seams: Guaranteeing the Promise of California's Landmark Anti–Sweatshop Law, An Evaluation of Assembly Bill 633 Six Years Later*, p. 2 (Sept. 2005)...................................................................15

v

## ISSUES PRESENTED

1.      Is a pre-printed Arbitration Form, drafted by a corporate employer requiring mandatory arbitration with an arbitrator pre-selected by the employer through an arbitration process unilaterally designed by the employer without any prior negotiations or meeting of the minds with the employee, that was presented to an employee on her first day of work along with numerous other employment forms to sign without a full opportunity to read the terms or an explanation of the terms by the employer before signing, **unconscionable**?

2.      Is a class arbitration waiver in employee arbitration agreements **unenforceable** as violative of California public policy?

3.      Is an employee's request for injunctive relief **arbitrable**?

## SUMMARY OF OPPOSITION

Defendants' Arbitration Form, which was drafted almost thirteen (13) years **before** Plaintiff even began her employment, is both procedurally and substantively unconscionable under firmly-established California law.  The form was buried in a set of at least twenty (20) employment forms and is a classic example of a take-it-or-leave-it, one-sided contract of adhesion forced upon employees with no bargaining power and no opportunity to negotiate its terms.  Defendants cannot realistically argue that Plaintiff should be bound by a form that she was unable to read before signing in Defendants' presence, as it was imposed on her as a condition of employment on her first day of work. Moreover, Defendants cannot claim that Plaintiff had a "right" to rescind when Defendant never gave her a copy of the form to take home or review to learn of this so-called right.  The form also is overly-harsh and patently one-sided because it obligates Plaintiff to arbitrate all claims against Defendants, yet allows Defendants to litigate claims they may bring against Plaintiff.  The Arbitration Form well exceeds the threshold of both procedural and substantive unconscionability and is, therefore, invalid and unenforceable.

Defendants' Arbitration Form also contains an unenforceable class arbitration waiver in violation of well-established California public policy.  The California Supreme Court has firmly rejected such class-action waivers as violative of this state's twin public policies favoring (1) the class action device and (2) lawsuits that seek to vindicate employees' rights to receive full and fair wages.  Enforcing Defendants' class arbitration waiver would impermissibly interfere with its employees' ability to vindicate their unwaivable rights to receive minimum wage and overtime compensation on a class-wide basis, leading to a less comprehensive enforcement of these rights and inefficient use of judicial resources.  This result is not what the California Legislature intended when it enacted the California Labor Code.  Class action waivers such as Defendants' are forbidden and unenforceable in California.

In addition to unpaid wages, penalties, and interest, Plaintiff's Complaint seeks injunctive relief.  California law precludes such requests for injunctive relief from arbitration.  Because an injunction is for the benefit of the general public and a judicial forum is significantly more capable of administering injunctive relief than an arbitral forum, Plaintiff's claims are not suitable for arbitration.  Accordingly, the Court should deny Defendants' motion.

## FACTS SUPPORTING UNCONSCIONBILITY

On her first day of work, Plaintiff met with Stephanie Shibiey to process all of her new-hire paperwork in order to begin her job with Defendants.  [Declaration of Janelle Jasso ("Jasso Decl.") at ¶¶ 2–3.]  At the meeting, she was provided with approximately twenty (20) different sets of employment forms to sign, with the Arbitration Form printed in approximately eight-point typeface, buried in the stack of forms.  [*Id.* at ¶¶ 3, 4; *see* Fisher Decl., Ex. 3.]  She was told that signing these forms was "standard procedure" and that everyone was required to do so as part of beginning their employment with Defendants.  [*Id.* at ¶¶ 3.]  However, Ms. Shibiey did not explain the contents of the forms to Plaintiff.  [*Id.* at ¶ 4.]  Rather, Ms. Shibiey simply handed Plaintiff the forms and

2

pointed to where she needed to sign.  [*Id.*]  Ms. Shibiey was handing the forms to Plaintiff so quickly that Plaintiff did not have the opportunity to read any of them before signing them within five (5) minutes.  [*Id.*]  Plaintiff felt compelled to sign all the forms she was presented with because she felt that failing to sign them might cause her to lose her job with Defendants.  [Jasso Decl. at ¶ 9.]  Defendant never gave Plaintiff a copy of the Arbitration Form she signed nor explained any of the terms to her.  [*Id.* at ¶¶ 6, 7, 14.] This form was printed in approximately eight-point typeface, [*see* Fisher Decl., Ex. 3], and was never explained to Plaintiff.  [*Id.* at ¶¶ 6–7.]

## LEGAL STANDARD

The Federal Arbitration Act ("the FAA") provides that a written arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2010).  The FAA, therefore, only sets forth a federal policy to ensure the enforceability of *valid*, private agreements to submit claims to arbitration.  *See Volt Info. Sci., Inc. v. Bd. Of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (noting that the FAA was "designed to . . . place [arbitration] agreements upon the same footing as other contracts" (internal quotations omitted)).  In determining whether a purported arbitration clause constitutes a valid agreement, courts "should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal parentheticals omitted); *see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 & n. 9 (1995) (applying Illinois and New York contract law to an arbitration agreement); *Volt*, 489 U.S. at 475–76 (applying California contract law to an arbitration agreement).  Accordingly, California law applies here to determine whether the parties entered into a valid, enforceable arbitration agreement.  [*See* Jasso Decl. ¶¶ 2, 3 (Arbitration Form executed in California).]

/ / / /

/ / / /

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>ARGUMENT</u>

1.  **DEFENDANTS' ARBITRATION FORM IS UNCONSCIONABLE AND THEREFORE UNENFORCEABLE.**

    A.    **Unconscionable Arbitration Agreements Are Not Enforced in California.**

        In California, the generally-applicable contract defense of unconscionability applies to arbitration agreements.  *Armendariz v. Found. Heal Psyhcare Servs.*, 24 Cal. 4th 83, 114 (2000); *see also* CAL. CIV. CODE § 1670.5(a); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or *unconscionability*, may be applied to invalidate arbitration agreements . . . ." (emphasis added)).  Unconscionability has two components:  procedural and substantive.  *Armendariz*, 24 Cal. 4th at 114; *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).  Procedural unconscionability involves the degree of "oppression" and "surprise" associated with the contract.  *Armendariz*, 24 Cal. 4th at 114; *A & M Produce*, 135 Cal. App. 3d at 486.  Substantive unconscionability, on the other hand, asks whether the actual terms of the contract are overly harsh, commercially unreasonable, or unfair given the circumstances.  *Armendariz*, 24 Cal. 4th at 114; *A & M Produce*, 135 Cal. App. 3d at 486–87.

        "'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'"  *Id.* at 114 (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997)).  But they do not need to be present in the same degree.  *Id.*  Rather, courts apply a sliding scale approach: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*; *accord A & M Produce*, 135 Cal. App. 3d at 487.

/ / / /

/ / / /

4

**B.     California's Unconscionability Doctrine is Not Preempted by the FAA.**

Defendants rely heavily and almost exclusively on *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) throughout its motion.  Unlike the employment class action brought by Plaintiff, *Concepcion* was a consumer class action seeking to recover $30.22 in sales tax paid on a free cell phone.  *Id.* at 1744.  The Supreme Court merely held that the FAA preempted California's *Discover Bank* rule, which held most class action and arbitration waivers in **consumer contracts** unconscionable.  *Id.* at 1746. *Concepcion*, however, did **not** hold that all of California's unconscionability law as applied to arbitration agreements is preempted by the FAA.  In fact, *Concepcion* expressly acknowledged that the general doctrine of unconscionability remains a basis for invalidating arbitration agreements:

> The final phrase of § 2 . . . permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or *unconscionability*," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

*Id.* at 1746; *accord Kanbar v. O'Melveny & Myers*, No. C–11–0892 EMC, 2011 WL 2940690, *6 (N.D. Cal. July 21, 2011) (publication forthcoming); *In re Checking Account Overdraft Litig.*, No. 09–MD–02036–JLK, 2011 WL 4454913, *4 (S.D. Fla. Sept. 1, 2011) ("*Concepcion* did not completely do away with unconscionability as a defense to the enforcement of arbitration agreements under the FAA.").  "Thus, *Concepcion* is inapplicable where, as here, we are not addressing the enforceability of a class action waiver or a judicially imposed procedure that is inconsistent with the arbitration provision and the purposes of [the FAA]."  *Sanchez v. Valencia Holding Co., LLC*, No. B228027, 2011 WL 5865694, *8 (Cal. Ct. App. Nov 23, 2011) (publication forthcoming).

/ / / /

5

### C.   Defendants' Arbitration Form is Procedurally Unconscionable.

Procedural unconscionability involves the degree of "oppression" and "surprise" in an arbitration agreement. *A&M Produce*, 135 Cal.App.3d at p. 486. "Oppression" results from unequal bargaining power between the parties where the weaker party has no meaningful choice but to accept the terms of the agreement. *Armendariz*, 24 Cal. 4th at 114; *A & M Produce*, 135 Cal. App. 3d at 486.

Here, Defendants' Arbitration Form is oppressive because it was pre-printed and presented to Plaintiff on a take-it-or-leave-it basis. *See Zullo v. Superior Court*, 197 Cal. App. 4th 477, 465–66 (2011) (holding that an arbitration agreement that was imposed on its employees as a condition of employment with no opportunity to negotiate was oppressive). On Plaintiff's first day at work, she was told that it was "'standard procedure'" for all employees to sign the "new-hire paperwork." [Jasso Decl. at ¶ 3.] She signed these forms, including the Arbitration Form, because she "felt that failing to sign them would cause [her] to lose [her] job with Defendants." [*Id.* at ¶ 9.] She was never given the opportunity to negotiate any of the terms of the Arbitration Form, nor was she ever told that she could refuse to sign it or object to any of its terms. [*Id.* at ¶¶ 8–11.] Moreover, Plaintiff had to sign the Arbitration Form in front of Ms. Shibiey and was never given the opportunity to seek legal advice before signing it. [*Id.* at ¶¶ 3–4 ,12.] In other words, Defendants' Arbitration Form was a contract of adhesion. Plaintiff could either accept its terms or find another job. *See Armendariz*, 24 Cal. 4th at 115 ("[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employees and necessary employment, and few employees are in the position to refuse a job because of an arbitration requirement."); *Zullo*, 197 Cal. App. 4th at 484 (same). Given the unequal bargaining power between the parties, Plaintiff had no meaningful choice but to accept the formulaic and standardized Arbitration Form as a condition of her employment with Defendants.

/ / / /

6

"Surprise," on the other hand, "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce*, 135 Cal. App. 3d at 486. Here, Defendants' Arbitration Form was a surprise because of the concealed way in which it was presented to Plaintiff. *See Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77 (2003) (holding that an inconspicuous arbitration clause was a surprise). At the meeting, Plaintiff was presented with about 20 sets of employment forms that required her attention and signature, each varying in length and topic. [Jasso Decl. at ¶ 3; *see e.g.,* Fisher Decl. at Ex. 1 & 2 (the 34-page Employee Agreement and the 2-paged Arbitration Form).] However, none of these forms, including the Arbitration Form, were ever explained to Plaintiff. [Jasso Decl. at ¶¶ 4, 6–7.] In fact, Defendants only gave her five (5) minutes to look over and sign the forms. [*Id.* at ¶4.] Therefore, Plaintiff did not have time to read the forms before she signed them. [*Id.* at ¶ 4 ("I felt rushed to sign the forms because Ms. Shibiey was handing me the forms so quickly that I did not have enough time to read them.").] Moreover, the terms of the Arbitration Form were printed in approximately eight-point typeface, (*see* Fisher Decl. at Ex. 2.), making it difficult to read. *See Gutierrez*, 114 Cal. App. 4th at 89 (arbitration clause in automobile lease procedurally unconscionable, in part because it was "printed in eight-point typeface"). She did not know that, by signing the Arbitration Form, she was waiving her right to have her employment related claims heard in a court of law. [Jasso Decl. at ¶ 5.] Had she known this, she would not have signed it. [*Id.*] In short, Defendants surprised Plaintiff with the Arbitration Form hidden in prolix printed forms drafted by Defendants.

Defendants argue that the Arbitration Form was not oppressive because it (1) gave Plaintiff the right to rescind the agreement within 21-days after she signed it, (2) stated that no adverse employment action would be taken against her if she chose to exercise this right, and (3) Plaintiff was given the opportunity to discuss the Arbitration Form with her private legal counsel. This is far from the truth. As previously mentioned, because of the way it was presented to her, Plaintiff did not have an opportunity to read the

Arbitration Form before signing it, and therefore, could not have been aware of this so-called "right to rescind." [Jasso Decl. at ¶ 4.]  Moreover, Defendants did not provide Plaintiff with a personal copy of the Arbitration Form, making it impossible for her to later learn about this purported right.  [*Id.* at ¶¶ 10, 14.]  Nor was she ever given an opportunity to discuss the Arbitration Form with an attorney before signing it.  Plaintiff was required to sign the Arbitration Form in front of Ms. Shibiey without an attorney present on her first day of work.  [*Id.* at ¶¶ 3–4, 12.]  Thus, Defendants made it impossible for Plaintiff to ever learn of, let alone exercise, this right to rescind the Arbitration Form.  Declaring that an employee has a right to rescind an agreement without ever informing that employee of that right is no right at all.

Additionally, Defendants argue that "Plaintiff signed a single-paragraph Employee Acknowledgement" to indicate that she had "carefully read [the Employee Handbook], including the DISPUTE RESOLUTION PROGRAM and the provisions relating to arbitration."  [Motion at 13:25–14:1.]  However, it is only at the end of the 32-page handbook that there is any mention of Plaintiff being required to arbitrate her claims. [See Fisher Decl., Ex. 1 at 32–33.]  This is a classic example of hiding an agreement to arbitrate in a prolix printed form, and is therefore procedurally unconscionable.  *See Sanchez*, 2011 WL 5865694, *10 (holding that an agreement to arbitrate located at the end of an lengthy contract is unconscionable).

### D.    Defendants' Arbitration Form is Substantively Unconscionable.

Substantive unconscionability focuses on the actual terms of the arbitration agreement and determines whether those terms are "overly harsh" or "one-sided." *Armendariz*, 24 Cal.4th at 114.  A contract is substantively suspect if, viewed at the time the contract was formed, it allocations risks in an unreasonable or unexpected manner.  *A & M Produce*, 135 Cal. App. 3d at 486.  The Arbitration Form was overly harsh and one-sided.  Despite Defendants' instance that the form imposes a mutual obligation to

arbitrate by title alone, this does not square with the actual language of the form.  The

form provides that it covers

> Claims for wages or other compensation due; claims for breach
> of any contract or covenant (express or implied); tort claims;
> claims for discrimination (including, but not limited to, race,
> sex, sexual orientation, religion, national origin, age, marital
> status, physical or mental disability or handicap, or medical
> condition); claims for benefits (except claims under an
> employee benefit plan that either (1) specifies that its claims
> procedure shall culminate in an arbitration procedure different
> from this one, or (2) is underwritten by a commercial insurer
> which decides claims); and claims for violation of any federal,
> state, or other governmental law, statute, regulation, or
> ordinance.

[Fisher Decl., Ex. 3.]  However, "*[e]mployees* bring actions under these laws," not

employers.  *Zullo*, 197 Cal. App. 4th at 486.  The types of claims covered under the

Arbitration Form are claims that only an employee would bring against his or her

employer.  Furthermore, the Employee Handbook states that if a dispute remains

unresolved after going up the chain of command, "[the employee] may request

arbitration."  (Fisher Decl., Ex. 1).  There is nothing about the Arbitration Form to

support Defendants' contention that ***Defendant*** would be bound to arbitrate any claim it

might have against the employee because an employer would almost never sue an

employee for the claims enumerated in the form.  Accordingly, Defendants' Arbitration

Form is substantively unconscionable.


### E.  Defendants' Arbitration Form Should Not Be Enforced Because it is Permeated by Unconscionability.

California Civil Code section 1670.5(a) states that "[i]f the court as a matter of law

finds the contract or any clause of the contract to have been unconscionable at the time it

was made the court may refuse to enforce the contract . . . ."  Therefore, the trial "court

has discretion under this statute to refuse to enforce an entire agreement if the agreement

9

is 'permeated' by unconscionability.  An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision.'" *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 853 (2010) (internal citation omitted) (quoting *Armendariz*, 24 Cal. 4th at 124); *accord Murphy v. Check 'N Go of Cal., Inc.*, 156 Cal. App. 4th 138, 149 (2007).  An arbitration agreement with "'multiple defects indicate[s] a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.'" *Lhotka*, 181 Cal. App. 4th at 853 (quoting *Armendariz*, 24 Cal. 4th at 124). Therefore, the question to be asked "is whether the interests of justice would be furthered by severance." *Armendariz*, 24 Cal. 4th at 124.  Here, Defendants' Arbitration Form is permeated by unconscionability because the manner in which the Defendants' got Plaintiff to sign the form was shocking and oppressive and the terms of the form are overly harsh and one-sided.  Accordingly, the entire Arbitration Form should be stricken and the Court should deny Defendants' motion to compel arbitration in its entirety.

**2.** **DEFENDANTS' CLASS ARBITRATION WAIVER VIOLATES ESTABLISHED PRINCIPLES OF CALIFORNIA PUBLIC POLICY AND IS THEREFORE UNENFORCEABLE.**

**A.**   **Class Arbitration Waivers in Wage-and-Hour Cases Waive Unwaivable Statutory Rights.**

Defendants' explicit class arbitration waiver is unenforceable because it violates long-standing California public policy.  In *Gentry v. Superior Court*, 42 Cal. 4th 443, 451–66 (2007), the California Supreme Court held that a class arbitration waiver that impermissibly interferes with an employee's ability to vindicate unwaivable statutory rights is unenforceable as a violation of public policy.  To reach this conclusion, the court analyzed the plain language of California Labor Code section 1194, which states that employees who do not receive minimum wage and overtime compensation have a private right of action to enforce these laws "'*[n]otwithstanding any agreement* to work for a

lesser wage.'" *Id.* at 455 (quoting CAL. LAB. CODE § 1194 (West 2011)).  In determining whether a class arbitration waiver could impermissibly waive these rights, the court observed "that although '[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses," . . . such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." *Id.* at 456 (alteration in original).  After all, "the requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." *Id.* at 459.  Moreover, the court noted that an employee who sues their employer individually is at greater risk of retaliation and that statistics show that "retaliation against employees for asserting statutory rights under the Labor Code is widespread." *Id.* at 459–61.  The court also pointed out that class actions may be necessary to ensure the effective enforcement of labor laws because most workers are unaware of their legal rights. *Id.* at 461–62.

For these reasons, the Supreme Court held that a trial court must consider the following factors in determining whether or not a class arbitration waiver impermissibly interferes with an employee's unwaivable statutory rights:  "[1] the modest size of the potential individual recovery, [2] the potential for retaliation against members of the class, [3] the fact that absent members of the class may be ill informed about their rights, and [4] other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration." *Id.* at 463.  If, based on these factors, the trial court concludes "that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and "that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it ***must*** invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.'" *Id.*

(alteration in original and emphasis added); *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1077 (2003).

## B.    Gentry's Public Policy Rule is Not Preempted by the FAA.

Defendants' argue that *Concepcion* abrogates the holding in *Gentry* because *Gentry* was based on some of the reasoning in *Discover Bank*.  [Motion at 11:8–12 :6.] However, "[t]he Supreme Court did not mention *Gentry* in its *Concepcion* opinion; only the *Discover Bank* rule explicitly was deemed preempted by the FAA."  *Plows v. Rockwell Collins, Inc.*, No. SACV 10–01936 DOC (MANx), 2011 WL 3501872, *4 (N.D. Cal. Aug. 18, 2011) (publication forthcoming).  There are, in fact, "difference[s] between the *Discover Bank* and *Gentry* rules, including the fact that the former deals with consumer contracts while the latter deals with employment agreements and that the two cases set forth different criteria for determining whether to enforce a class action ban."  *Id.*  Cases recognizing these differences have held that *Gentry* is still good law.

For example, in *Brown v. Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 497–98 (2011), a post-*Concepcion* employment case dealing with class action waivers, the California Court of Appeal held that the plaintiffs had not provided sufficient evidence to show that the arbitration agreement was unenforceable under *Gentry*.  The case was therefore remanded to the trial court with directions to conduct further discovery on whether the *Gentry* test was satisfied.  *Id.*  Because of this, the court stated that it "d[id] not have to determine whether under [*Concepcion*] . . . , the rule in *Gentry* . . . concerning the invalidity of class action waivers in employee-employer contracts disputes is preempted by the FAA."  *Id.*  The remainder of the *Brown* opinion, however, suggests that, if the California Court of Appeals had been required to resolve that question, it would have decided it in the negative."  *Plows*, 2011 WL 3501872, *4.

First, *Brown* highlighted the differences between *Discover Bank* and *Gentry*, noting that the "'*Discover Bank* is a case about unconscionability, [whereas] the rule set forth in *Gentry* is concerned with the effect of a class action waiver on unwaivable rights

12

*regardless of unconscionability.*'"  *Brown*, 197 Cal. App. 4th at 498 (emphasis in original) (*Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 836 (2010)); *accord Sanchez v. Western Pizza Enters., Inc.,* 172 Cal. App. 4th 154, 172 (2009). *Brown* went on to state that *Concepcion* "specifically deals with the rule enunciated in *Discover Bank*" and declined to adopt a broad interpretation of the Supreme Court's opinion.  *Id.* at 499.  Finally, in *Brown*'s concurrence, Judge Kriegler noted that "*Gentry* remains the binding law of this state which we must follow," until the California or United States Supreme Court rules otherwise.  *Id.* at 505 (Krieger, J., concurring) (citing *Auto Equity Sales v. Superior Court*, 57 Cal. 2d 450, 455 (1962)).  Courts, relying on *Brown*, have held that *Gentry* remains valid law. For example, in *Plows v. Rockwell Collins, Inc.*, the district court, citing Brown, held that the rule of *Gentry* survives *Concepcion*.  2011 WL 3501872, *5 ("*Gentry* remains valid law").

The district court cases cited by Defendants are inapposite.  For example, in *Lewis v. UBS Financial Services Inc.*, __ F. Supp. 2d __, 2011 WL 4727795, at *5 (N.D. Cal. Sept 30, 2011), the district court held that *Gentry* was overruled by *Concepcion* because *Gentry* "'prohibits outright the arbitration of a particular type of claim'" and therefore it "'is displaced by the FAA.'" (quoting *Concepcion*, 131 S. Ct. at 1747).  However, the district courts' reasoning is not in tune with the rule in *Gentry*.  *Gentry* does not prohibit the outright arbitration of a particular type of claim.  Rather, it only prohibits class and arbitration waivers in wage-and-hour cases that would make it difficult, or even impossible, for an employee to vindicate his or her unwaivable statutory rights ***after*** making a detailed inquiry into the four (4) *Gentry* factors above.  *Gentry*, 42 Cal. 4th at 463.  Defendants other cases rely on this same flawed analysis.  *See e.g.,Valle v. Lowe's HIW, Inc.*, 2011 WL 36674441, at *6 (N.D. Cal. Aug. 22, 2011); *Murphy v. DirecTV, Inc.*, No. 2:07–cv–06465–JHN–VBKx, 2011 WL 3319574, *4.  In fact, some of the cases that Defendants claim are "in accord" with *Lewis* don't actually rule on *Gentry*'s continuing vitality.  *See, e.g., Grabowski v. Robinson*, __ F. Supp. 2d __, 2011 WL 4353998, *19 (S.D. Cal. Sept. 19, 2011) (failing to even *mention Gentry*); *Quevedo v.*

13

1  *Macy's, Inc.*, __ F. Supp. 2d __, 2011 WL 3135052, at *16–17 (C.D. Cal. June 16, 2011)

2  (noting that "it was reasonable for [Defendant] to believe that the *Gentry* rule would be

3  enforced in this Court"); *Morse v. ServiceMaster Global Holdings Inc.*, No. C 10–00628

4  SI, 2011 WL 3203919, *3, n. 1 (N.D. Cal. July 27, 2011) (not expressly ruling on

5  *Gentry*).   Accordingly, *Gentry* survives *Concepcion*.

6

7  **C.    Defendants' Class Arbitration Waiver is Unenforceable Under the Four**
   **Gentry Factors.**

8

9  "*Gentry* . . . require[s] a *factual* showing under the four-factor test established in

10 that case." *Brown*, 197 Cal. App. 4th. at 497.  The fact that Defendants did not move to

11 compel arbitration until the filing of the instant motion means that there has been no need

12 to conduct any sort of discovery on this issue.  *Plows*, 2011 WL 3501872, *5.  Because of

13 this, Plaintiff only has limited factual information to support the *Gentry* factors.

14 Therefore, if the court holds that Plaintiff cannot meet the four-factor *Gentry* test with its

15 current knowledge of the case, Plaintiff respectfully requests the opportunity to conduct

16 discovery on these issues.  *See e.g., id* (remanding to the trial court with orders to allow

17 the parties to conduct discovery on the enforceability of the arbitration agreement);

18 *Brown*, 197 Cal. App. 4th 864–65 (same).

19         Nevertheless, even with the current information Plaintiff possess, there is enough

20 information to satisfy the test in *Gentry* to show that Defendants' class arbitration wavier

21 is unenforceable.

22

23         **1.    Modest Potential Individual Recovery**

24         The *Gentry* court noted that "litigation over minimum wage by definition involves

25 the lowest-wage workers" and "overtime litigation also usually involves workers at the

26 lower end of the pay scale." 42 Cal. 4th at 457–58.  In fact, according to a report issued

27 by the Department of Labor Standards Enforcement (DLSE), "the average award from its

28 wage adjudication unit for 2000–2005 was $6,038." *Id.* at 458; *see also* Asian Pacific

American Legal Center et al., *Reinforcing the Seams: Guaranteeing the Promise of California's Landmark Anti–Sweatshop Law, An Evaluation of Assembly Bill 633 Six Years Later*, p. 2 (Sept. 2005) (average claim for overtime and minimum wage violations submitted to DLSE ranged from $5,000–$7,000).  Indeed, in *Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715, 745, the Court of Appeals held that a claim of as much as $37,000 was not sufficiently ample incentive for an individual to litigate an overtime claim, citing the uncertainty of recovery, the difficulty of bringing such claims to trial and the length and expense of litigation.

Here, Defendants' *own* calculations show that there is only modest potential for individual recovery, and therefore insufficient incentive to properly enforce the law.  In Defendants' Notice of Removal, Defendants calculated that the amount in controversy for Defendants' case was $5,816,742.04 and 451 potential class members.  [*See* Goodfellow Decl., Ex. 2 at 7 (table).]  Dividing the amount in controversy by the number of potential class members gets us $12,897.42, a rough estimate of what Defendants' believe is the potential individual recovery for this case.  Noticeably, this number is only marginally higher than the national average from 2005–2006 and *drastically* lower than the $37,000 potential recovery in *Bell*.  Accordingly, the potential for individual recovery for Plaintiff and the other potential class members is too low to encourage them to file individual claims and adequately enforce the law.

### 2.      Fear of Potential Employer Retaliation

The mere fact that an employer claims it will not retaliate against an employee who brings a lawsuit against it is not enough to quell an employee's fears of potential retaliation.  *Gentry*, 42 Cal. 4th at 462.  After all, it is not simply the potential for retaliation that courts must consider, but the *fear* of potential retaliation itself.  *Id.* at 461.  Indeed, there is a longstanding recognition by the California judiciary that the fear of potential retaliation by an employer is a substantial factor to be considered in employer-employee litigation.  *See, e.g.*, *Richards v. CH2M Hill, Inc.* 26 Cal. 4th 798, 821 (2001);

15

*Mullins v. Rockwell Int'l Corp.* 15 Cal.4th 731, 741 (1997). Here, Plaintiff specifically states that during her employment with Defendants, she felt as though Defendants would retaliate against or fire her if she attempted to bring a lawsuit against them. [Jasso Decl. at ¶ 15.] Indeed, it is worth noting that Plaintiff did not file her complaint against Defendants until *after* she stopped working for Defendants, when the potential for retaliation lessened. Accordingly, there was enough fear of potential retaliation from Defendants to discourage employees from filing individual claims against Defendants.

### 3.     Knowledge of Rights

The *Gentry* court noted that "it may often be the case that . . . illegal employer conduct escapes the attention of employees. Some workers . . . may be unfamiliar with overtime laws" or "may not be aware of the nuances of overtime laws with their sometimes complex classifications of exempt and nonexempt employees." 42 Cal. 4th at 567 (citing *Ramirez v. Yosemite Water Co.* 20 Cal.4th 785, 796–98 (1999)). This fact holds true here. Plaintiff and the other putative class members are likely ill-informed of their rights given the way in which Plaintiff was presented with the new-hire employment forms. Without the opportunity to read the forms, she would never have been informed about the relevant California Labor Codes.

### 4.     The Class Arbitration Waiver is Unenforceable

Because the *Gentry* factors are satisfied, "class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration." *Gentry*, 42 Cal. 4th at 463. Additionally, "the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations." *Id.* Accordingly, this court "*must* invalidate [Defendants'] class arbitration waiver to ensure that [Defendants'] employees can vindicate [their]

unwaivable rights . . . ."  *Id.* (emphasis added, international quotation marks omitted, and alteration in original).

### 3. THE BROUGHTON-CRUZ RULE PROHIBITS PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF FROM BEING COMPELLED TO ARBITRATION.

In *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1082–83 (1999), the Supreme Court of California held that public injunction actions brought under the Consumer Legal Remedies Act ("CLRA") are non-arbitrable.  It noted that when the "plaintiff in [a] case is functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public[,] . . . arbitration is not a suitable forum."  *Id.* at 1079–80.  In short, the court noted two factors that, taken in combination, "make for an 'inherent conflict' between arbitration and the underlying purpose of the CLRA's injunctive relief remedy.  First, that relief is for the benefit of the general public rather than the party bringing the action" and "[s]econd, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators."  *Id.* at 1082 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635–36 (1985)).

In *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315–16 (2003), the Supreme Court of California extended this rule to cover public injunction actions for deceptive advertising brought under the Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 et seq.  It noted that, like *Broughton*, the deceptive advertising injunction was brought on behalf of the general public and that the courts had significant institutional advantages over arbitral forms in granting this relief.  Accordingly, under the *Broughton-Cruz* rule, "requests for injunctive relief designed to benefit the public present a narrow exception to the rule that the [FAA] requires state courts to honor arbitration agreements."  *Id.* at 312.

/ / / /

17

### A.     The *Broughton-Cruz* Rule is Not Preempted by the FAA.

The *Broughton-Cruz* rule allowing citizens to bring injunctive relief claims on behalf of the public is not inconsistent with the FAA.  In *Concepcion*, the Supreme Court stated that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."  131 S. Ct. at 1747.  The *Broughton-Cruz* rule, however, is not an "outright" prohibition of certain types of claims.  Rather, it explicitly recognizes that certain injunctive claims may be arbitral and provides guidelines for making this determination.  *See Cruz*, 30 Cal. 4th at 315 (holding that arbitration was improper for injunctive claims brought on behalf of the general public but declined to rule on all injunctive claims, such as "UCL injunction relief actions brought by injured business competitors"); *Broughton*, 21 Cal. 4th at 1079 ("We need not decide the broad question framed by the Court of Appeal and by plaintiffs as to whether an arbitrator may ever issue a permanent injunction.").  Accordingly, *Concepcion* has no effect on the continuing viability of the *Broughton-Cruz* rule.  *See Ferguson v. Corinthian Colleges*, Nos. SACV 11–0127 DOC (AJWx), SACV 11–0259 DOC (AJWx), 2011 WL 4852339, *9–10 (C.D. Cal. Oct 6, 2011) (publication forthcoming) (holding that the *Broughton-Cruz* rule survives *Conception*); *In re DirectTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, ML 09–2093 AG (ANx), 2011 WL 4090774, *9–10 (C.D. Cal. Sept. 6, 2011) (publication forthcoming) (same).

### B.     The *Broughton-Cruz* Rule Encompasses Plaintiff's Request for Injunctive Relief.

In her complaint, Plaintiff alleges numerous violations of the California Labor Code under the UCL, (*see* Compl. at ¶¶ 65–81), and requests actual, consequential, and incidental damages, (*id.* at ¶ 14), restitution for unpaid wages, (*id.* at ¶ 15), appointment of a receivership, (*id.* at ¶ 16), attorneys' fees, (*id.* at ¶ 17), and "further relief as the Court may deem equitable and appropriate" (*id.* at ¶ 18).  Encompassed in this last

request is a prayer for injunctive relief against further violations by Defendants of the California Labor Code.

The *Broughton-Cruz* rule applies in this case. Plaintiff is seeking an injunctive relief for the benefit of all other current and former employees. The California Legislature intended that wage-and-hour laws would be enforced through some sort of class proceeding. *See Gentry*, 42 Cal. 4th at 455–56. "Although overtime and minimum wage laws may at times be enforced by the [DLSE] " the California legislature intended "that minimum wage and overtime laws should be enforced in part by private action brought by aggrieved employees." *Id.* (citing *Bell*, 115 Cal. App. 4th at 746). Indeed, the former chief counsel of the DLSE indicated that without private enforcement through class actions, the department's resources to resolve wage and hour violations would be overtaxed. *See Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th at 746 ("'Requiring two thousand or so class members to go through individual 'Bergman' hearings would obviously be extremely inefficient as compared to a single class action. Also, a deluge of claims would simply outstrip the resources of the DLSE . . . impacting not only these claimants but others unrelated to this suit.'").

Plaintiffs request for "further relief as the Court may deem equitable and appropriate" is for the good of the general public, not just for Defendants' current and future employees. "California courts have long recognized [that] wage and hour laws concern not only the health and welfare of the workers themselves, but also the public health and general welfare." *Gentry*, 42 Cal. 4th at 456 (alteration in original and internal quotation marks omitted) (quoting *Early v. Superior Court*, 79 Cal. App. 4th 1420, 1430). For example, overtime wages "spread employment throughout the work force by putting financial pressure on the employer" thereby "fostering society's interest in a stable job market." *Id.* (internal quotation marks omitted) (quoting *Early*, 79 Cal. App. 4th at 1430). Moreover, overtime laws serve the important interest of "protecting employees in a relatively weak bargaining position against the evil of overwork." *Id.* (quoting *Barretine v. Arkansas—Best Freight Sys*, 450 U.S. 728, 739 (1981)). Therefore, Plaintiff

1  is acting on behalf of the general public, not herself.  As *Broughton-Cruz* held, the
2  judicial forum has significant institutional advantages over arbitration in administering
3  the injunctive relief sought in this case, which as a consequence, will likely lead to the
4  diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.
5  Accordingly, Plaintiff's request for equitable relief falls within the scope of the
6  *Broughton-Cruz* rule and cannot be compelled to arbitration.

7
8                                   CONCLUSION
9          For the foregoing reasons, Plaintiff respectfully requests that this court deny
10  Defendants' motion to compel arbitration and stay civil proceedings in its entirety.

11
12  Date:  December 1, 2011                    R. REX PARRIS LAW FIRM

13
14
15                                      By: /s/ Alexander R. Wheeler
16                                           Alexander R. Wheeler
17                                           Attorneys for Plaintiff and the
                                             Putative Class
18
19
20
21
22
23
24
25
26
27
28