**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JANELLE JASSO, individually and on behalf
others similarly situated,

       Plaintiff,

     vs.

MONEY MART EXPRESS, INC., DOLLAR
FINANCIAL GROUP, INC.,

       Defendants.

Case No.: 11-CV-5500 YGR

**ORDER DENYING MOTION FOR REMAND**

Plaintiff Janelle Jasso brings the instant action on behalf of herself and a putative class of similarly situated California employees for violation of California Labor Code sections governing, *inter alia*, overtime compensation, meal and rest breaks, reimbursement for employment-related expenses, and penalties based upon failure to pay wages timely. Defendants Money Mart Express, Inc. and Dollar Financial Group, Inc. (collectively, "Dollar") removed the action from the San Francisco Superior Court on November 16, 2011, based upon the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2)(A) and diversity jurisdiction pursuant to 28 U.S.C. §1332(a). The parties are presently before the Court on Plaintiffs' Motion for Remand.

Having read and considered the papers submitted and the pleadings in this action, the Court hereby DENIES the motion.

BACKGROUND

Plaintiff filed her class action complaint in the Superior Court of the State of California for the County of San Francisco on October 11, 2011, alleging Labor Code violations, and other

United States District Court
Northern District of California

violations under California law.  The Complaint alleges claims for violations of minimum wage laws (Cal. Lab. Code §§ 1194, 1197 and 1198); Unpaid Overtime (Cal. Lab. Code § 510); Unpaid Rest Period Premiums (Cal. Lab. Code §§ 226.7 and 512(a)); Wages Not Timely Paid During Employment (Cal. Lab. Code § 204); Wages Not Timely Paid Upon Termination (Cal. Lab. Code §§ 201 and 202); Non-Compliant Wage Statements (Cal. Lab. Code § 226(a)); Failure To Keep Proper Payroll Records (Cal. Lab. Code § 1174(d)); Failure to Reimburse Necessary Business-Related Expenses and Costs (Cal. Lab. Code §§ 2800 and 2802); and Violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.).  The putative class is defined as "[a]ll current and former hourly paid or non-exempt California based (i.e. currently "residing" in California) employees who worked for Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment."  (Complaint ¶14.)

On November 16, 2011, Defendants filed their Notice of Removal.  Defendants removed this lawsuit based on 28 U.S.C. § 1332(d) (the Class Action Fairness Act), 1441(a), 1446(b) and 1453. (Notice of Removal, p. 2)  In support of Removal, Defendants offer two declarations one from Jason Fisher, the Director of Human Resources and one from Melissa H. Soper, the Senior Vice President of Corporate Administration.

APPLICABLE STANDARD

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court.  28 U.S.C. §1441.  A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure.  28 U.S.C. §1447(c).  The removal statutes are construed restrictively, so as to limit removal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). There is a "strong presumption" against removal jurisdiction. *Gaus v. Miles. Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Doubts as to removability are resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). District courts also have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1). Section 1332(a)'s amount –in-controversy requirement excludes only "interest and costs," so attorneys' fees are included in the calculation. *Guglielmino v. McKee Foods Corp.* 506 F.3d 696, 700 (9th Cir., 2007).

"[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 685 (9th Cir. 2006). Thus, Dollar bears the burden to establish that this Court has jurisdiction over Jasso's claims. Jurisdiction cannot be based on speculation. *See Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson, supra*, 319 F.3d 1089, 1090-91 (9th Cir. 2003). The

propriety of removal is usually determined solely on the basis of pleadings filed in state court. *Williams v. Costco Wholesale Corp.,* 471 F.3d 975, 976 (9th Cir.2006). When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1001 (C.D.Cal.2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199, 1205 (E.D.Cal. 2008); *Rippee v. Boston Market Corp.,* 408 F.Supp.2d 982, 986 (S.D.Cal. 2005).  In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence" relevant to the amount in controversy at the time of the removal."  *Valdez v Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

DISCUSSION

Plaintiff's motion for remand is based solely upon her assertion that Dollar has not met its burden of proof to establish that the case meets the amount in controversy requirement under CAFA. No dispute is raised regarding the diversity, numerosity, or private defendant requirements of CAFA.

A.      Standard of Evidence Required of Removing Defendant

Because the parties do not agree on the appropriate burden of proof, the Court first addresses that issue.  The Ninth Circuit has "identified at least three different burdens of proof which might be placed on a removing defendant in varying circumstances," only two of which are pertinent to this case.  *Guglielmino, supra,* 506 F.3d at 699.  If it is "unclear or ambiguous from the face of a state-

United States District Court
Northern District of California

court complaint whether the requisite amount in controversy is pled[,] ... a preponderance of the evidence standard" applies.  *Id.* (citing *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996).  If, however, "a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.'" *Id.* (quoting *Lowdermilk, supra,* 479 F.3d at 1000).

Plaintiff contends that the higher legal certainty standard applies because she prays for relief as follows in the complaint: "[f]or damages, restitution, and penalties in excess of twenty-five thousand dollars ($25,000) but not to exceed five million dollars ($5,000,000)."  (Complaint at page 16.)  Relying on *Guglielmino and Lowdermilk,* Dollar argues that the preponderance of the evidence standard applies since attorneys' fees must be included in the amount-in-controversy calculation and Plaintiff has not alleged attorneys' fees as part of her "not to exceed five million dollars" allegation. The Court agrees that the failure to include attorneys' fees in the prayer as one of the items of recovery renders the prayer ambiguous as to whether the total is less than the threshold limit.  *See Guglielmino*, 506 F.3d at 701; *see also Green v. Staples Contract & Commercial, Inc.,* 2008 WL 5246051, *3 (C.D.Cal., December 10, 2008) [the key distinction between *Guglielmino* and *Lowdermilk* "was the fact that in *Lowdermilk* the plaintiff alleged that all 'claims' amounted to less than the jurisdictional minimum, not just 'damages.'].

Plaintiff argues that the allegation in the prayer was clearly intended to state that the case was over the state court's limited jurisdiction threshold and under the federal court's CAFA jurisdiction threshold and the fact that it was intentionally drafted this way means that it was unambiguous.  The Court cannot agree that the allegation actually and unambiguously states that the full amount in controversy is below the CAFA threshold, even if it appears that it was Plaintiff's intention to do so.

In light of that ambiguity, the preponderance standard would apply. However, it is the Court's analysis that, regardless of the standards applied, standard Dollar has established that the amount-in-controversy exceeds the five million dollar threshold here. Plaintiff's allegations, even if they were unambiguous, are rebuttable. Dollar has offered sufficient evidence to rebut the claim that the amount in controversy is under the threshold amount.

B.      The Amount-in-Controversy Calculation

        1.      *Evidence Offered By Dollar*

In support of removal jurisdiction, Dollar offers the declaration of one of its employees regarding the numbers of employees, payperiods and average rates of pay during the applicable limitations periods. The Declaration of Jason Fisher, Director of Human Resources, states: (1) the number of hourly paid non-exempt employees, i.e. putative class members, during the one year period applicable to the Labor Code §1197.1 penalty claim; (2) the number of bi-weekly paychecks for the one year preceding filing of this action issued to non-exempt employees; (3) the number of employees employed in the three years preceding the filing of this action, the average wage of those employees, and the number of bi-weekly checks distributed to those employees; (4) the number of employees employed in the four years preceding the filing of this action, the average wage of those employees, and the number of bi-weekly checks distributed to those employees. (Fisher Dec. ¶¶ 9-11).

In the Notice of Removal ("NOR"), Dollar then calculates the amount in controversy based upon these figures. Dollar uses a four-year statute of limitations for overtime, since the claim is alleged under California Business & Professions Code §17200 as well as the California Labor Code; a three-year statute of limitations for missed meal and rest breaks,[1] and a one-year statute of

---

[1] Dollar contests applicability of the longer four-year statute of limitations under Business & Professions Code §17200 to missed rest and meal period compensation. For purposes of the amount-

United States District Court
Northern District of California

United States District Court
Northern District of California

1  limitations for the failure to pay wages timely under Labor Code §340(a).  Plaintiff does not contest

2  the applicable limitations periods for these claims in this motion.[2]

3      Plaintiff objects to the Fisher Declaration on the grounds that it does not provide an adequate

4  foundation and that it violates the Best Evidence Rule, Rule 1002 of the Federal Rules of Evidence.

5  Plaintiff contends the evidence should be disregarded and the case should be remanded as a result.

6  The foundation here is sufficient and his testimony is not being offered to establish the content of a

7  particular writing.  Fisher avers that he is the Director of Human Resources for Dollar's United

8  States Retail Operations, that he had staff in Human Resources compile information that is kept in

9  the normal course of business pertaining to Dollar employees, and that he reviewed and analyzed this

10  information regarding hourly-paid, non-exempt California employees for the time periods one, three

11  and four years prior to the filing of the complaint through November 7, 2011.  Accordingly,

12  Plaintiff's objections are OVERRULED.

13      *2.   Assumptions Underlying the Calculations of the Amount in Controversy*

14      Dollar's calculations make a number of assumptions based upon the figures in the Fisher

15  declaration.  They assume that each of the employees missed one hour of overtime pay each week, or

16  two hours per payperiod.  NOR ¶16.  They likewise assume that each of the employees missed one

17  meal period and one rest break per week, or two per pay period.  NOR ¶23.  The meal and rest break

18  penalty calculations assume a violation for each employee in connection with each paycheck for a

19  one-year period.  NOR ¶14.

---

in-controversy calculation, the Court will apply the shorter statute of limitations without expressing a
view as to the ultimate question of the correct statute of limitations with respect to these claims.

[2]  The Court notes that Dollar did not offer calculations for any other claims, such as
Plaintiff's claims for reimbursement under Labor Code §2802 and for penalties based on failure to
pay wages or final pay timely under Labor Code §§201, 202, 204.  As Dollar bears the burden of
establishing removal jurisdiction, i.e. the burden of showing that the amount in controversy exceeds
the limit, any additional amounts due to those claims are not considered in connection with this
motion.

United States District Court
Northern District of California

Using the above statutes of limitations, the numbers of employees employed during the relevant period, and the number of paychecks paid to each of those employees during that period, along with the lowest average hourly wage paid in the relevant periods, Dollar calculates that unpaid overtime comes to $1,508,600.04,[3] meal break penalties come to $769,366.00[4], and rest break penalties come to $769,366.00. And, with respect to the penalty for failure to pay minimum wages the calculations assume a violation for each payperiod check, for a total of $2,769,350.00.[5] These total to an amount in controversy of $5,816.742.00 for the overtime claim, meal and rest break and timely payment penalties alone.

The Court finds that the basic hourly rate and pay period figures used by Dollar to calculate the amount in controversy are appropriate. To determine an hourly rate for these calculations, Dollar used the lowest average wage for the relevant time period. This is apparently proper and Plaintiff does not quarrel with these figures as such.[6]

---

[3] This figure was reached by taking 45,634 paychecks during the relevant statutory period, and a lowest average hourly rate of $11.02 per hour, multiplied by the 1.5 times overtime premium, Dollar calculates this amount to be $1,508,660.04. (NOR at ¶12, page 7.)

[4] During the three-year time period, Dollar employed 734 employees and issued 33,020 paychecks to those employees. The penalty for a missed meal break is one hour's pay. The penalty for a missed rest break is also one hour's pay. Using the lowest average wage for the period ($11.65), total penalties calculated as follows: 33,020 payperiods x 2 meal break violations x 2 rest break violations x $11.65 per violation.

[5] Dollar used a one-year statute of limitations for the minimum wage penalties based upon California Code of Civil Procedure §340(a). Dollar employed 451 employees who met the class definition, and issued 11,348 biweekly paychecks to those employees. Penalties calculations assume one initial violation for each of the 451 putative class members (at the statutory rate of $100 for each initial violation), plus subsequent violation penalties ($250 for each subsequent violation) for each paycheck issued that was a subsequent violation (11,348 total paychecks minus the 451 initial violation paychecks).

[6] The Court notes Dollar submitted evidence that Plaintiff was paid an hourly rate of $13.25 initially and $16.69 by the time of her termination and that Plaintiff received overtime compensation each payperiod during her employment at an average of 7.7 hours per pay period. However, Dollar did not base its calculations on these higher figures. (Fisher Dec. at ¶ 6, 7.)

To determine the correct number of weeks, Dollar looked at the number of paychecks issued to the putative class members in the relevant statute of limitations period.  Although Plaintiff argues that Dollar overstates the number of weeks by including every week within the time period, it appears the calculations are actually keyed to the number of *paychecks actually issued* for those employees within the alleged class during that time period, rather than assuming that all class members worked all possible weeks in the time period.  This is a reasonable basis for the calculations.

Plaintiff objects that the calculations are flawed and speculative and not supported by the allegations of the complaint.  Plaintiff argues that assuming one hour of overtime per week as well as one meal and one rest break violation each week is not supported by the complaint.  Citing to *Fletcher v. Toro Co.,* 2009 WL 8405058 (S.D. Cal., February 3, 2009), Plaintiff says that the court there rejected assumptions about the number of violations because they were unsupported by the evidence.  Court's actual determination in *Fletcher* was that defendant had not demonstrated that the allegations of the complaint necessarily supported a conclusion that all class members were employed during the entire period.  The court there stated that even if the allegations of the complaint were taken as true, and no employee was ever given a meal or rest break during the four year period, defendant's calculation still unreasonably assumed that every class member worked for defendant every work day for four years, a fact not alleged.  *Id.* at *8.

The allegations indicate that Dollar has made a reasonable and conservative estimate of the amounts at issue based upon those allegations.  The complaint alleges that plaintiff and each class member "worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants. . . [and] that Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly paid or non-exempt employees [which] scheme involved,

*inter alia*, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law.  (Complaint at ¶ 27, 28.)  It further alleges that: "[a]t all material times set forth herein, Defendants failed to pay overtime wages. . .  for all hours worked . . . [and] failed to provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members."  (Complaint at ¶ 40, 41.)  Given the allegations of a "uniform policy and scheme" and that the violations took place "at all material times," one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.  *Cf. Ray v. Wells Fargo Bank NA*, 2011 WL 1790123 at *6-7 (C.D. Cal., May 9, 2011) (assumption of one hour overtime per week proper where allegation was "consistent" overtime); *Jimenez v. Allstate Ins. Co.*, 2011 WL 65764 at *3 (C.D. Cal., January 7, 2011) (same); *Wilson v. Best Buy Co.,* Inc., 2011 WL 445848 at *2 (E.D. Cal., February 8, 2011) (same, based on allegations of overtime "during the relevant time period").

Plaintiff cites to *Roth v. Comerica Bank*, 799 F.Supp.2d 1107 (C.D. Cal. 2010), *Martinez v. Morgan Stanley & Co., Inc.*, 2010 WL 3123175 (S.D. Cal., August 9, 2010), and *Ruby v. State Farm Gen. Ins. Co.,* 2010 WL 3069333 (N.D. Cal., August 4, 2010) as supporting her position that Dollar may not make the assumptions it does to reach its amount-in-controversy figure.  In *Roth*, with respect to a class-wide overtime claim, the Court found that there was no basis in the complaint or the evidence for an estimated 3 to 5 hours of overtime per week per class member, and no basis for use of the full overtime rate for plaintiff when his allegation was not that he was not paid at all, but that he was not paid an overtime premium for overtime work.  *Roth, supra,* 799 F.Supp.2d at 1119-1120.  In *Martinez*, the defendant misunderstood and overestimated the number of putative class members in addition to making an unsupported assumption that every class member worked four hours of overtime per week and 10 hours per month, and missed three meal and rest periods per

United States District Court
Northern District of California

week based on an allegation that they were missed "frequently." *Martinez, supra,* 2010 WL 3123175 at *6. Similarly, in *Ruby,* the court there was unwilling to credit defendant's assumptions that each class member had the maximum number of days for post-termination waiting time penalties, the maximum number of payperiods for wage statement violations, and weekly rest and meal break violations where the allegation was only that employees missed "some" breaks. *Ruby, supra,* 2010 WL 3069333 at *4. Similarly, in *Ray v Nordstrom, Inc.,* 2011 WL 6148668, *3 (C.D. Cal. December 9, 2011), the court found that allegations that the defendant failed to pay all employees "at least some regular and overtime hours" did not support an assumption of one hour of missed regular pay and one hour of missed overtime pay per payperiod.

These cases stand in sharp contrast to the instant action. Where, as here, the allegations are that class members were not compensated for overtime and were denied meal and rest breaks at "all material times" based on a "uniform policy and systematic scheme" to deprive them of these rights, it is reasonable to assume one violation per week where. It would not be reasonable to double, triple or quadruple those numbers without any evidence to support the calculations as in *Martinez* and *Ruby*, nor would it be reasonable to assume consistent, weekly violations where only sporadic violations were alleged as in *Ray v Nordstrom.*

       3.    *Inclusion of Attorneys' Fees in the Amount In Controversy*

Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction. *Guglielmino, supra,* 506 F.3d at 700. Here, the estimated attorneys' fees are based upon an assumption about the attorneys' recovery as a percentage of the total amount in controversy. Plaintiff argues that this conclusion about the amount of attorneys' fees is pure speculation and therefore cannot properly be used to augment the amount in controversy calculation. Plaintiff contends that because Dollar's calculation is not based on any itemized list of attorneys'

fees incurred in similar cases, and relies on a flawed underlying calculation of $5.8 million in damages and penalties, it should not be included in the amount in controversy.

Dollar has sufficiently demonstrated that the amount in controversy exclusive of attorneys' fees exceeds the threshold, so the Court need not decide whether the estimate of attorneys' fees is sufficient here.  However, the Court notes that it is well established that the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)); *see also Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844 at *5 (S.D.Cal., March 6, 2009) ("In wage and hour cases, "[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.") (citing *Hanlon,* 150 F.3d at 1029).   Thus, it is not unreasonable for Dollar to rely on this estimate using the common fund method under the circumstances here.

CONCLUSION

For the foregoing reasons, the Court finds that Dollar has met its burden of establishing that the amount in controversy in this litigation exceeds the jurisdictional threshold under CAFA. Therefore, the motion for remand is DENIED.

IT IS SO ORDERED.

March 1, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**