**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANELLE JASSO, individually and on behalf others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MONEY MART EXPRESS, INC., DOLLAR FINANCIAL GROUP, INC.,<br><br>Defendants. | Case No.: 11-CV-5500 YGR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY CIVIL PROCEEDINGS** |

Plaintiff Janelle Jasso brings the instant action on behalf of herself and a putative class of similarly situated California employees for violation of California Labor Code sections governing, *inter alia*, overtime compensation, meal and rest breaks, reimbursement for employment-related expenses, and penalties based upon failure to pay wages timely. Defendants Money Mart Express, Inc. and Dollar Financial Group, Inc. (collectively, "Dollar") removed the action from the San Francisco Superior Court on November 16, 2011, based upon the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2)(A) and diversity jurisdiction pursuant to 28 U.S.C. §1332(a). The parties are presently before the Court on Defendants' Motion to Compel Arbitration and to Stay the Civil Action Pending Arbitration.

Having carefully considered the papers submitted in support of and in opposition to the motion, the supplemental briefing submitted at the request of the Court, the arguments of counsel, and the pleadings in this action, the Court hereby GRANTS the motion for the reasons stated herein.

**BACKGROUND**

Plaintiff filed her class action complaint in the Superior Court of the State of California for the County of San Francisco on October 11, 2011, alleging Labor Code violations, and other violations under California law. On November 16, 2011, Defendants filed their Notice of Removal. Defendants bring this motion to compel arbitration and stay proceedings in this court.

Plaintiff was employed by a Dollar subsidiary from May 14, 2008 to December 1, 2009, initially as a manager in training and then as a store manager. On May 14, 2008, she signed two documents relevant to this motion: (1) an Employee Acknowledgement acknowledging receipt of the Employee Handbook ("Employee Acknowledgement"); and (2) a document entitled "Mutual Agreement to Arbitrate Claims." ("Arbitration Agreement"). (Declaration of Jason Fisher, filed November 17, 2011, Exh. 1-3.) The Employee Acknowledgement provides, in part, that the person signing has "carefully read this handbook, including the DISPUTE RESOLUTION PROGRAM and provisions relating to arbitration before signing below, and I agree that my employment is at will and will be governed by the terms of this handbook." (Fisher Dec., Exh. 2.)

Pages 26 to 33 of the Handbook describe the Defendants' employee dispute resolution policy, including its "open door policy," an informal conference for resolving problems, and arbitration as the third step if "a dispute remains unresolved and involves a legally protected right." (Fisher Dec., Exh. 1 at pg. 30.) A two-page description of the arbitration process follows, including a bolded paragraph stating:

> Effective July 1, 1995, Dollar Financial Group, Inc. and its subsidiaries and affiliated entities have adopted this program and policy as its exclusive means of resolving workplace disputes for legally protected rights. That means that any employee who

2

> accepts or continues a job at Dollar Financial Group, Inc. or any of its subsidiaries or affiliated entities after that date will agree to resolve all legal claims against his or her employer through this process instead of through the court system.  Any arbitration will be under the Employment Dispute Resolution Rules of the AAA, a copy of which is available upon request.  In connection with any such arbitration, the Company will pay all costs unique to arbitration (other than an amount equivalent to the first filing fee that would have been applicable), including administrative fees of the AAA and arbitrator compensation.

(*Id*. at page 32.)

The Arbitration Agreement states that:

> [t]he Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against any of the Company, its officers, directors, employees, or agents in their capacity as such or otherwise, the Company's parent, subsidiary and affiliated entities. . . . ."

(Fisher Dec Exh. 3.)  The Arbitration Agreement further includes a class action waiver provision stating as follows:

> All disputes, including any [sic] all Claims asserted by me. . . as a representative and/or member of a class of persons, and/or in any other representative capacity, against the Company and/or related third parties ("representative claims") shall be resolved only on an individual basis with me.  Therefore, the arbitrator shall not conduct class arbitration; that is, the arbitrator shall not allow me to serve as a representative, as a private attorney general or in any other representative capacity for others in the arbitration.

(Fisher Dec., Exh. 3 at 1-2.)

**STANDARD FOR MOTION TO COMPEL ARBITRATION**

The FAA requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement.  9 U.S.C. § 3.  A party may bring a motion in the district court to compel arbitration.  9 U.S.C. § 4.  In ruling on the motion, the court's role is limited to determining whether: (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Lifescan, Inc. v. Pernaier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If those questions are answered in the affirmative, the court must enforce the agreement.

1    Section 2 of the FAA provides that arbitration clauses may be invalidated based "upon the
2 same grounds as exist in law or in equity for the revocation of any contract, such as fraud, duress or
3 unconscionability. 9 U.S.C. §2, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. __, 130 S.Ct. 2772,
4 2776 (2010). The court applies ordinary state-law principles in determining whether an agreement is
5 revocable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). However, the FAA
6 preempts any state-law defenses that apply only to arbitration or that derive their meaning from the
7 fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, ___ U.S. __, 131
8 S.Ct. 1740, 1745-47 (2011) (*Concepcion*). Because of the strong policy favoring arbitration, doubts
9 are to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v.*
10 *Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).

## DISCUSSION

12    Here, there is no question as to whether there is an arbitration agreement between the parties
13 or whether the claims at issue are covered by the terms of the Arbitration Agreement. Instead the
14 parties disagree as to whether the terms of the agreement, particularly the class action waiver term,
15 are enforceable.

16    Defendant argues that its Arbitration Agreement is enforceable because it is comprehensive,
17 mutual, and fair, and provides for a neutral arbitrator, no limitation on remedies or discovery, a
18 written award, an opportunity for review of the decision, and minimal costs to the employee to
19 arbitrate. Defendant argues that the Supreme Court's recent decision in *Concepcion* overruled prior
20 California Supreme Court authority, the "*Discover Bank* rule," under which California courts held
21 arbitration agreements to be unconscionable and unenforceable simply because they contained class
22 action waivers. *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2008). Therefore, the existence of
23 such a waiver in the arbitration agreement here is no impediment to its enforcement.

24    Plaintiff argues that the agreement is both procedurally and substantively unconscionable and
25 is therefore invalid and unenforceable. Plaintiff contends that the agreement was buried in a pile of
26 employment forms, is one-sided and adhesive, and lacks mutuality in the obligation to arbitrate
27 claims. Moreover, Plaintiff argues that the agreement contains an unenforceable class arbitration
28 waiver which violates California public policy, particularly because it would impermissibly interfere

4

with employees' ability to vindicate their non-waivable, statutory rights to receive minimum wage and overtime compensation as provided in the California Labor Code. And finally, because California law holds that an arbitrator cannot properly award and monitor injunctive relief, enforcement of the Arbitration Agreement would deprive Plaintiff of a remedy she seeks on behalf of the general public.

### A. Does the Class Action/Arbitration Waiver Render the Arbitration Agreement Unconscionable?

#### 1. Concepcion

Prior to the Supreme Court's decision in *Concepcion* last year, the controlling California authority concerning class action waivers was *Discover Bank*. There, the California Supreme Court applied the FAA as well as principles of unconscionability to determine whether to enforce an arbitration agreement containing a class action waiver. *Discover Bank* held that:

> when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then ... the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank, supra,* 36 Cal.4th at 162. The U.S. Supreme Court's recent decision in *Concepcion* examined *Discover Bank* and ultimately abrogated this rule. *Concepcion, supra,* 131 S.Ct. at 1746.

In *Concepcion*, the Supreme Court analyzed a consumer phone services contract which included an arbitration provision and a class-action waiver. *Id.* at 1744. *Concepcion* started from the principle that the FAA was enacted to reflect "both a liberal federal policy favoring arbitration and the fundamental principles that arbitration is a matter of contract." *Id.* at 1745 (internal citations and quotations omitted). The Supreme Court's ruling in *Concepcion* followed from its earlier decisions in *Southland v. Keating*, 465 U.S. 1, 10 (1984) and *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987), which held that state statutes or judicial rules treating agreements to arbitrate in a different manner

from other agreements were impermissible under the FAA. Thus, the Court held in *Concepcion* that arbitration agreements are to be enforced "according to their terms." *Concepcion, supra,* 131 S.Ct. at 1748 (internal citations omitted). While the FAA permits certain contract-based defenses to enforcement, "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are not cognizable. *Id.* at 1747-48. Accordingly, *Concepcion* court overturned *Discover Bank*, holding that the rule there "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." *Id.* at 1747-48.

Plaintiff attempts to distinguish *Concepcion* to avoid enforcement of the Arbitration Agreement here. She argues that *Concepcion,* and the *Discover Bank* case it overruled, were cases about consumer contracts, not employment agreements and violation of employee statutory protections as stated here. She contends that the long-standing public policy, expressed in California labor law and in the California Supreme Court's decision in *Gentry v Superior Court*, 42 Cal.4th 443, 451-66 (2007), provides that class action waivers in employment agreements are unenforceable because they impermissibly interfere with an employee's ability to vindicate unwaivable statutory rights.

Citing *Gentry*, Plaintiff argues that class action waivers in arbitration agreements would, if enforced, act essentially as exculpatory clauses for employers because they make it too difficult and expensive for individual employees to pursue and prove wage violations. *Id*. at 456, 459. Moreover, the ability to bring an action as a collective action may be necessary to ensure that the labor laws are enforced, particularly because many workers are unaware of their legal rights and remedies or fear retaliation by their employers for asserting those rights. *Id.* at 461-62. Thus, *Gentry* held that a class arbitration waiver is unenforceable if a Plaintiff can demonstrate:

> the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration.
>
> If the Court concludes, based on an examination of these factors, 'that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds

6

>that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can vindicate [their] unwaivable rights in an arbitration forum.'

*Gentry, supra,* 42 Cal.4th at 463, quoting *Little v Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1077 (2003). Because *Gentry*'s decision rests on different policy concerns stemming from employees' statutory rights which were not addressed in *Concepcion*, Plaintiff contends that *Concepcion* cannot be read to overrule *Gentry*.

The *Concepcion* court was clear that, in abrogating *Discover Bank*, it was expressly overruling the reasoning that "[w]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Concepcion*, 131 S.Ct. 1740, 1746, quoting *Discover Bank*, *supra,* 36 Cal.4th at 162 [internal citations and quotations omitted]. Here, the court can find no principled basis to distinguish between the *Discover Bank* rule and the rule in *Gentry,* given the broad language used by the Supreme Court in *Concepcion. Discover Bank* and *Gentry* each looked to the modest size of individuals' potential recovery, unequal knowledge and bargaining power in the contractual relationship, and "other real world obstacles" to vindication of the individuals' rights. Compare *Discover Bank, supra,* 36 Cal.4th at 162 with *Gentry, supra,* 42 Cal.4th at 463. While the *Concepcion* court may not have taken into account the special potential for retaliation when there is an ongoing employment relationship between the parties, it did consider an equally important public policy concern regarding fraud and willful injury to consumers. The absence of discussion in *Concepcion* concerning employer retaliation as one of the "real world

7

obstacles" to vindication of individuals' rights does not appear, standing alone, to permit a departure from *Concepcion*'s broad statement that the FAA prohibits state-law created barriers to arbitration.

### *2. Amex II*

Plaintiff argues that her position finds support in the recent, post-*Concepcion* decision by the Second Circuit, *In re American Express Merchants' Litigation ("Amex II")*, 667 F.3d 204 (2d Cir. Feb. 1, 2012.) In *Amex*, the Second Circuit initially found a class-action waiver provision in a mandatory arbitration agreement to be unenforceable. The Supreme Court issued a writ of certiorari and vacated and remanded that initial decision for reconsideration in light of its decision in *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S.Ct. 1758 (2010) (panel of arbitrators could not impose class arbitration where agreement was silent as to its availability and parties did not otherwise consent to arbitration proceeding as a class action on antitrust claims).

On remand, the Second Circuit determined that the agreement was unenforceable, but stayed its decision pending the Supreme Court's review in *Concepcion*. Once *Concepcion* was issued, the Second Circuit again re-examined its determination in *Amex* and concluded the agreement was still unenforceable because imposition of a class-action waiver would essentially preclude any anti-trust claims against American Express. Based on the record evidence, including detailed testimony from a doctorate in economics, the court concluded that the cost of individually arbitrating each plaintiff's dispute with Amex would be prohibitive, effectively depriving them of the statutory protections of the antitrust laws. *Amex II, supra,* 667 F.3d at 217-18. Distinguishing *Concepcion*, the Second Circuit stated:

> It is tempting to give both *Concepcion* and *Stolt–Nielsen* . . . a facile reading, and find that the cases render class action arbitration waivers per se enforceable. But a careful reading of the cases demonstrates that neither one addresses the issue presented here: whether a class-action arbitration waiver clause is enforceable even if the plaintiffs are able to demonstrate that the practical effect of enforcement would be to preclude their ability to vindicate their federal statutory rights.

8

*Id.* at 212. As the Court in *Amex II* reasoned, "Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Id.* at 214, *citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974) ["[n]o competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. . . [e]conomic reality dictates that petitioner's suit proceed as a class action or not at all.']; *also citing Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338 (1980); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.2004) ("the realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").

However, more recent authority, both from the Supreme Court and from the Ninth Circuit resolves any ambiguity and establishes that, under *Concepcion*, arbitration agreements will be enforced in all but the most limited of circumstances. First, in *CompuCredit*, the Supreme Court clarified that any distinction from *Concepcion* based upon state law versus federal "substantive law of arbitrability" (*Amex II,* 667 F.3d at 212) was not viable. *CompuCredit* holds that, absent a clear statement in a federal statute showing Congressional intent to override the use of arbitration, in the FAA prevails. *CompuCredit, supra,* 132 S.Ct. at 669. This is so even if the federal statute provides a "right to sue" and states that any waiver of rights "shall be treated as void." *Id.* at 670-71.

Moreover, to the extent that *Amex II*'s holding rested on the principle that a class waiver should be unenforceable where the amounts at issue in the claims and the expense of prosecuting the claims would effectively preclude vindication of statutory rights (*Amex II*, 667 F.3d at 218-19), that argument has been soundly rejected by the Ninth Circuit's subsequent decision in *Coneff*, based upon its reading of the "broadly written" language of *Concepcion*. *Coneff, supra,* 2012 WL 887598 at *2,

\*3.[1] As *Coneff* noted, the majority in *Concepcion* rejected the argument that precluding collective claims decreases effective enforcement, and therefore deterrence, because the small size of individual claims is worth much less than the cost of litigating them or are insufficient to give individual consumers incentive to bring them. *Id.* at \*3. In the Ninth Circuit's reading of *Concepcion*, the Supreme Court held that "[s]uch unrelated policy concerns, however worthwhile, cannot undermine the FAA." *Id.*, *citing Concepcion, supra,* 131 S.Ct. at 1753. This court cannot do other than read the decision the same way. Thus, any effort to distinguish the situation in *AmEx II*, or here, from *Concepcion* fails.

### 3. D.R. Horton

Plaintiff further argues that the rule in *Concepcion* should not apply based upon the reasoning in the National Labor Relations Board's recent decision in *D.R. Horton Inc.,* 357 N.L.R.B. No. 184 (January 3, 2012). While the Board's decision is not binding upon this Court, Supreme Court authority cited within the decision plainly is. In *D.R. Horton*, the Board considered whether an employer violates the National Labor Relations Act ("NLRA") when it requires an employee to sign an agreement precluding class or collective claims concerning their wages, hours or other working conditions. The Board, relying on numerous Board and Supreme Court decisions interpreting the NLRA, determined that such an agreement violates Section 7 of the NLRA, 29 U.S.C. §157. Section 7 provides, among other things, that employees shall have the right to "engage in [ ] concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. §157. The Board held in *D.R. Horton* that an agreement precluding collective or representative claims by employees impermissibly

---

[1] The Court notes that the Arbitration Agreement here expressly provides for an award encompassing the same remedies as would be available under the state statutes alleged to have been violated. (*See* Fischer Dec., Exh. 3 ["[t]he arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose or federal law or both, as applicable to the claims asserted."].)

10

interferes with those employees' rights to engage in concerted activity for mutual aid or protection. *D.R. Horton,* 357 N.L.R.B. No. 184.

Defendants offer several arguments as to why *D.R. Horton* has no application here. First, they argue that the NLRA's protections only apply in the context of collective bargaining or union organizing activity. This argument is plainly without merit. Well-established federal precedent holds that the NLRA's mutual aid protections extend to workers' actions to "improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship. . .[including] resort to administrative and judicial forums." *Eastex Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978); *see also Brady v. National Football League,* 644 F.3d 661, 673 (8th Cir. 2011) ("a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment *is* 'concerted activity' under § 7 of the National Labor Relations Act") (emphasis in original); *Mohave Elec. Co-op, Inc. v. NLRB,* 206 F.3d 1183, 1188 (D.C. Cir. 2000) (petition for injunction supported by fellow employees and co-signed by a coworker was protected concerted activity). The protections of Section 7 of the NLRA are not limited only to those employees who are members of a collective bargaining unit or a union. *NLRB v. Wash. Aluminum Co.,* 370 U.S. 9, 14-15 (1962).

Second, Defendants argue that the analysis in *D.R. Horton* is inapplicable because Plaintiff has not made a claim under the NLRA and, further, this court would have no jurisdiction to determine whether there has been a violation of the NLRA if Plaintiff had so claimed since that is a matter left to the exclusive jurisdiction of the Board. This argument, again, misses the mark. The analysis regarding the NLRA is offered not as an affirmative claim by Plaintiffs, but as a basis for opposing enforcement of the arbitration agreement. The issue here is not whether the Court should find Defendants liable for a violation of the NLRA, but whether the Court should consider the

11

legality of a contract provision in deciding whether to enforce such provision. This is plainly within the Court's jurisdiction. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86 ("[w]hile only the Board may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates" the NLRA); *see also Hurd v. Hodge*, 334 U.S. 24, 34-35 (1948) (federal courts have a duty to determine whether a contract violates federal law before enforcing them). Individual agreements that waive, discourage, or forbid an employee's exercise of the rights provided in the NLRA are unenforceable. *See National Licorice Co. v. NLRB*, 309 U.S. 350, 360, 364 (1940); *J.I. Case v. NLRB,* 321 U.S. 332, 337 (1944). Thus, the analysis runs, this Court should refuse to enforce an arbitration agreement that includes a class action waiver provision because to do so would be enforcing an agreement that is forbidden by the NLRA.

This brings the Court to the third and most difficult of Defendants' arguments concerning *D.R. Horton* – that to follow the *D.R. Horton* to its conclusion would put the NLRA in clear conflict with the FAA because it would mean that arbitration agreements could not be enforced according to their terms, as required by *Concepcion*. Defendants argue that, where there is a clear conflict between the FAA and another statute, the court should look to whether there is statutory language, legislative history, or authority demonstrating that Congress intended the other statute to override the FAA, citing the Supreme Court's recent, and post-*Concepcion*, decision in *CompuCredit v. Greenwood*, 132 S.Ct. 665, 668-69.[2] Here, as Defendants argue and Plaintiff concedes, there is no language in the NLRA (or in the related Norris-LaGuardia Act) demonstrating that Congress intended the employee concerted action rights therein to override the mandate of the FAA.

Plaintiff counters this argument first by contending that there is no conflict, and, in the alternative by contending that even if there were a conflict, the NLRA's requirements would override

---

[2] The Court notes that, while arguing that the Court should look to such history or other authority in order to determine whether the FAA overrides the other statute, Defendants have not offered that history or authority in support of their motion.

12

the FAA. As to the first point, Plaintiff argues that the FAA does not specifically mention class arbitrations, and does not prohibit them. Further, the FAA's savings clause provides that agreements to arbitrate may be invalidated "on such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus the FAA leaves open the possibility that an agreement to arbitrate may not be enforceable by its own terms when such terms make them revocable due to illegality, including illegality under the NLRA. So long as the NLRA treats arbitration agreements like any other agreement, there is no conflict.

Plaintiff next argues that, to the extent there is a conflict between the FAA and NLRA, a court must consider the relative strength of the concerns and objectives behind the statutes and whether one can accommodate the other, citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974). The purposes and objectives of the NLRA are plainly stated in 29 USC §102 – to protect employees' concerted activity for mutual aid. Plaintiff argues that, to the extent the FAA can be said to have a purpose to preclude employee concerted activity in the form of collective litigation or arbitration, such purposes are at best implicit in the statute.

Plaintiff's attempted distinctions do not overcome the broad language in *Concepcion* which articulates a strong policy choice in favor of enforcing arbitration agreements and thereupon holds that class waiver provisions should not be stricken or render the agreements unenforceable. First, Court in *Concepcion* stated that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion* at 1748; *see also Coneff*, at *2. The Court emphasized that the FAA is meant to ensure enforcement of the terms of arbitration agreements, including terms that limit "with whom a party will arbitrate its disputes." *Id.* at 1749, citing *Stolt-Nielsen* at 1773. Though still holding open the possibility of class-wide arbitration where there is consent of the parties, the Supreme Court

13

expressed its view that class arbitration "is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law." *Concepcion, supra,* 131 S.Ct. at 1753. As the Supreme Court stated in *Concepcion*:

> the overarching purpose of the FAA, evident in the text of §§2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.

*Concepcion*, 131 S.Ct. at 1748. Thus, although collective actions such as class-wide arbitration are not forbidden by the terms of the FAA, the Supreme Court has held that countervailing concerns about small dollar claims and lack of effective prosecution of such claims would not be enough to warrant a departure from the FAA's mandate to enforce agreements according to their terms. *Id.* at 1750-1752. "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. While *Concepcion* was focused on preemption analysis and whether a state could establish a rule contrary to the FAA, its statement of the meaning and purposes of the FAA applies equally in the context of determining which federal statute controls here. In short, *Concepcion* holds that collective arbitration is contrary to the purposes of the FAA and thus the FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis.

Moreover, the Supreme Court's post-*Concepcion* decision in *CompuCredit* held that courts are required to enforce agreements to arbitrate according to their terms, "unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Compucredit, supra,* 132 S.Ct. 669 (*quoting Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226). Because Congress did not expressly provide that it was overriding any provision in the FAA, the Court cannot read such a

14

provision into the NLRA and is constrained by *Concepcion* to enforce the instant agreement according to its terms.[3]

### *4. The Class Action Waiver Does Not Render the Agreement Unenforceable*

In light of *Concepcion*, the California Supreme Court's decision in *Gentry* no longer provides a means to avoid enforcement of an arbitration agreement containing a class action waiver in an employment agreement. Further, while the NLRB's analysis in *D.R. Horton*, relying on prior Supreme Court authority not directly on point, makes a somewhat compelling argument that class-wide claims in the employment context should be permitted regardless of an agreement to submit to individual arbitration only, that reasoning does not overcome the direct, controlling authority holding that arbitration agreements, including class action waivers contained therein, must be enforced according to their terms. As the Ninth Circuit recently stated in *Coneff v. AT & T Corp.*, 09-35563, 2012 WL 887598 (9th Cir. Mar. 16, 2012), "[e]ven if we could not square *Concepcion* with previous Supreme Court decisions, we would remain bound by *Concepcion,* which more directly and more recently addresses the issues. . . in this case." *Coneff* at *3 (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989) ("[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").

As a result, unless the agreement is otherwise unenforceable for unconscionability in its other terms, the inclusion of a class action waiver provides no basis for denying the instant motion.[4]

---

[3] The Court notes that, according to the decision in *Concepcion*, the FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *Concepcion, supra*, 131 S.Ct. 1740, 1745. The NLRA was enacted in 1935 and amended in June 1947.

15

### B. *Is the Arbitration Agreement Rendered Unenforceable Due to a Request for Injunctive Relief on Behalf of the Public?*

Plaintiff also argues that, because she seeks injunctive relief on behalf of the putative class, her claims cannot be compelled to arbitration. The California Supreme Court has held that where the plaintiff is acting as a private attorney general seeking to enjoin future unlawful practices, the arbitral forum is inappropriate and presents a narrow exception to the general rule of FAA preemption. *See Broughton v. Cigna Healthplans of California*, 21 Cal.4th 106, 1082 (1999); *Cruz v. PacifiCare Health System, Inc.*, 30 Cal.3th 303, 312, 315-16 (2003). This rule, Plaintiff contends, is not one prohibited by *Concepcion* as an outright ban on arbitration of all injunctive relief claims, but instead a consideration about whether certain claims brought on behalf of the public are meant to be covered by the FAA.

However, the Ninth Circuit has recently held that the *Broughton-Cruz* rule does not survive *Concepcion* because it, too, is a prohibition against arbitration of a particular type of claim. *Kilgore v KeyBank, N.A.*, 09-16703, ___ F.3d ___, 2012 WL 718344 at *10 (March 7, 2012).

Moreover, and as Defendants point out in reply, Plaintiff has not actually asserted in her complaint a prayer for injunctive relief on behalf of the public or otherwise. (*See* Complaint at 17-

---

[4] This conclusion is in line with other district courts that have examined the question of *Concepcion*'s applicability to class claims in employment law cases. *See, e.g., Lewis v UBS Financial*, 818 F.Supp.2d 1161 (N.D. Cal. 2011); *Quevedo* v. Macy's Inc., 798 F.Supp.2d 1122 (C.D. Cal. 2011) (class action waiver in arbitration agreement enforceable per *Concepcion*, required to arbitrate PAGA and Labor Code claims); *Valle v. Lowe's HIW, Inc.,* 2011 WL 3667441, *6 (N.D.Cal.2011); *Murphy v. DIRECTV,* 2011 WL 3319574, at *4 (C.D.Cal. 2011); *Morse v. ServiceMaster Global Holdings, Inc.,* 2011 WL 3203919, at *3 n. 1 (N.D.Cal. 2011).

16

18.) Thus, any conflict between public injunctive relief and the use of an arbitral forum is irrelevant here.[5]

### C. *Is the Arbitration Agreement Otherwise Unenforceable Due to Unconscionability?*

The Supreme Court in *Concepcion* acknowledged that the FAA continues to have an exception permitting arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract" such as fraud, duress or unconscionability. *Concepcion, supra,* 131 S.Ct. at 1746, *accord Sanchez v. Valencia Holding Co., LLC,* 201 Cal.App.4th 74, 89 (2011); *Kanbar v. O'Melveny & Myers,* __ F.Supp.2d.___, 2011 WL 2940690 at *6 (N.D.Cal. 2011) (after *Concepcion*, "arbitration agreements are still subject to unconscionability analysis"). To be unenforceable, a contract must be both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000).

Procedural unconscionability concerns the manner in which the agreement was negotiated, and it is present if the contract was the product of oppression or surprise. *Armendariz, supra,* 24 Cal.4th at 114. A contract is the product of oppression if there was an inequality of bargaining power denying the weaker party the opportunity to negotiate the terms of the contract. *Id.* at 113. "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz, supra*, 24 Cal.4th at 115.

---

[5] While some courts have found that *Concepcion* does not compel arbitration when the claims are wage penalty claims brought under the California Private Attorney General Act (PAGA), California Labor Code §2699, the Court notes that Plaintiff does not allege a PAGA claim here either. *See, e.g., Brown v. Ralphs Grocery Co.*, 197 Cal.App.4th 489, 499; *Urbino v. Orkin Services of California, Inc.*, __F.Supp.2d __, 2011 WL 4595249, *10-11 (C.D.Cal. 2011).

Substantive unconscionability concerns terms of the agreement and whether those terms are overly harsh or one-sided. *Armendariz, supra,* 24 Cal.4th at 114.

Substantive unconscionability turns on whether there is a "modicum of bilaterality" as well as whether there is any justification for a lack of bilaterality. *Id.* at 117-118. Put more plainly, an agreement may be substantively unconscionable if it requires arbitration of claims by one party but not the other.

In determining that a contract cannot be enforced for unconscionability, both procedural and substantive unconscionability must be present, but they need not be present in the same degree. *Armendariz, supra*, 24 Cal.4th at 114. "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*; *see also Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 454 (2010).

Here, Plaintiff argues that the Arbitration Agreement was oppressive because it was on a pre-printed form and was presented on a take-it-or-leave-it basis as a condition of employment. Plaintiff states that she "felt that failing to sign" the agreement would have caused her to lose the opportunity of a job with Defendant. (Declaration of Janelle Jasso, filed December 1, 2011, ¶ 9.) She states that she felt rushed to sign the form, given to her in a set of about 20 forms that she had to look over quickly and sign on the spot, none of which were explained to her. (*Id.* at ¶¶ 3, 4.) She declares that, had she known that by signing the form she would be giving up her right to have employment-related claims heard in court, she would not have signed it. (*Id.* at ¶ 5.) Plaintiff also argues that the agreement and the description of the arbitration program was "hidden" in the forms, the latter not appearing in the 32-page Handbook until the end.

18

The Court's review of the Arbitration Agreement and the Handbook does not support a determination that the arbitration provisions were hidden or that there was any surprise about the terms. The Handbook spends several pages discussing the arbitration program and that it means that employees must give up their right to bring claims in a court of law. This description immediately precedes the Acknowledgement Form. And, most significantly, the two-page Arbitration Agreement, while written in relatively small type, is not so small as to be unintelligible, and was clearly signed and initialed by Plaintiff directly under the statement, in all caps and in the same (or perhaps a slightly larger) typeface as the rest of the document: "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL." (Fisher Dec. at Exh. 3.) However, the agreement was apparently a condition of employment, and presented on a take-it-or-leave-it basis.[6] Thus, Plaintiff has demonstrated at least some amount of procedural unconscionability due to the adhesive nature of the agreement.

As to substantive unconscionability, Plaintiff argues that the agreement is not mutual since the types of claims enumerated as being covered by the agreement, including wage claims, claims for discrimination, and claims for benefits are all exclusively types of claims that an employee, not an employer, would make. However, Plaintiff's argument overlooks that the Arbitration Agreement actually provides that "the Company and I mutually consent to the resolution by arbitration of all

---

[6] Defendants point to a provision in the agreement giving Plaintiff a right to rescind it within 21 days if she did not agree and stating that no adverse employment action would be taken against her if she chose to exercise this right. (Fisher Dec. Exh. 3 at page 2, ¶4.) Plaintiff states that she was not aware of this right when she signed and that she was not provided with a copy of the agreement, making it impossible to learn of it later. (Jasso Dec. at ¶ 8, 12.) As stated in the Employee Handbook, "any employee who accepts or continues a job at Dollar Financial Group, Inc. or any of its subsidiaries or affiliated entities . . . will agree to resolve all legal claims against his or her employer through this process instead of through the court system." (Fisher Dec., Exh. 1 at 32.) Thus, whether refusing to submit to the arbitration agreement is or is not a basis for termination appears to be answered differently by the two documents. Owing to this, and to the fact that plaintiff was not given a copy of the agreement to review and consider whether she wished to rescind it within the 21-day period, the right to rescind is apparently illusory.

claims . . . that the Company may have against me or that I may have against. . . the Company." (Fisher Dec. Exh. 3, p.1.) While the Arbitration Agreement goes on to enumerate examples of the types of claims covered, it in no way limits the mutual obligation to arbitrate claims.[7] Plaintiff having offered no other basis for finding the agreement substantively unconscionable, the Court cannot so find.

In sum, Plaintiff offers only a minimal showing of procedural unconscionability, and a showing that is not sufficient on its own to render the agreement unenforceable. *See Lagatree v. Luce, Forward, Hamilton & Scripps,* 74 Cal.App.4th 1105, 1127 (1999) (citing cases to demonstrate that "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

## CONCLUSION

Defendants' Motion to Compel Arbitration and Stay Civil Proceedings is GRANTED. The parties are ordered to submit their dispute to arbitration pursuant to the Arbitration Agreement signed on May 14, 2008. Plaintiff's Motion to Strike is VACATED in light of this order.

The parties are ORDERED TO SHOW CAUSE in writing no later than April 30, 2012, why this action should not be dismissed, rather than stayed pursuant to 9 U.S.C. § 3.

IT IS SO ORDERED.

April 13, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Plaintiff's statement in her opposition that "[t]here is nothing about the Arbitration Form to support Defendants' contention that Defendant would be bound to arbitrate any claim it might have against the employee" is disingenuous and potentially sanctionable. (Plaintiff's Opposition filed December 1, 2011.) Counsel are admonished that zealous advocacy does not include misstatement of the record.

20